CYNTHIA W. GOODHOUSE (FORMERLY DeFRAVIO) v. DAVID DeFRAVIO

No. 8126DC765

(Filed 4 May 1982)

**Divorce and Alimony § 24.4— willful failure to support child — evidence of changed circumstances inadequate**

In a support action in which defendant was found to be in civil contempt, there was sufficient evidence to support the trial court's conclusion "that defendant has deliberately attempted to avoid his financial responsibilities to his daughter and that he has not acted in good faith" where he sold the total assets of his company, worth about one million dollars, for $10,000, and returned to school.

APPEAL by defendant from *Saunders, Judge.* Order entered 13 February 1981 in District Court, MECKLENBURG County. Heard in the Court of Appeals 30 March 1982.

The history of this case spans a period of over ten years and reflects an effort on the part of the plaintiff to secure reasonable child support for the parties' minor child.

On 8 February 1971, the parties were granted an absolute divorce. No arrangement was made for custody or child support. By mutual agreement plaintiff has retained custody, and from 1974 until 1978 defendant voluntarily supported his child with payments ranging from $80 to $200 per month.

In November of 1977, plaintiff sought the assistance of counsel in an effort to have the child support payments increased.

Negotiations were unsuccessful, and on 17 January 1978, plaintiff filed a motion seeking an award of back child support, future child support, and attorney's fees. Based on defendant's substantial income at the time and the needs of his child, the court ordered defendant to pay $500 a month towards her support. Defendant was also ordered to pay a specified amount of back child support and attorney's fees.

Defendant moved for a decrease in the monthly support payments on 5 March 1979. He had elected to leave his job and go into business for himself. Plaintiff agreed, and the court ordered, that for a twelve-month period beginning June 1979 defendant would pay $300 per month, the additional $200 per month being allowed to accumulate and produce an arrearage of $2,400. Defendant was ordered to liquidate the arrearage in full, on or before 1 June 1980, and, at that time, resume the $500 monthly payments. The court added that "[i]n the event Defendant does not pay the $2,400, then Plaintiff may move this Court for a hearing to ascertain whether or not Defendant is capable of paying the $2,400.00." The court further noted that "[i]t is the intent of both Plaintiff and Defendant with respect to permitting a temporary reduction in monthly support payments while accruing the arrearage for payment by June of 1980, to aid Defendant in establishing the new business to the end that future payments for child support shall be made promptly and in the amounts as set in the Order entered April 14, 1978."

Defendant's new business prospered. Nevertheless, he chose to sell his equity interest in the business, worth $61,000, for $10,000. In addition, the purchaser agreed to liquidate $50,000 in loans defendant had made to the company by paying $10,000 at closing and $40,000 payable at a rate of $10,000 per year plus 8 percent interest over four years. Of the $20,000 defendant received at closing, $17,000 was given to his grandfather in repayment of a loan, although there was an understanding between the two that the loan could be paid at a rate of $500 a month. Defendant believed "that the obligation to my grandfather was at least as important if not superior to the obligation of providing support for my daughter in the amount of $500.00 per month."

In May of 1980 defendant elected to become a full-time student, at which time he moved the court for a modification of

"child support, both as to periodic payments, and accumulated arrearages, commensurate with the defendant's earning and ability to make payments." Plaintiff moved that defendant's motion to reduce support be denied, that she be awarded attorney's fees, and that defendant be found in civil contempt for failure to pay support and arrearages pursuant to the June 1979 order.

A hearing was held on the cross-motions in early January 1981. The court made extensive findings of fact based on defendant's testimony and affidavit of financial standing and concluded that defendant's voluntary choice to reduce income, return to college, and not provide child support was insufficient evidence to support a reduction in his court-ordered obligations. "Defendant has the earning capacity and ability to make substantial amounts of money. If he elects not to do so, while that is an alternative he may wish to follow, it is not one that justifies nonpayment of child support." The court also concluded that defendant "has had at all times, and presently has the ability and capability of liquidating the outstanding child support arrearage of $4,000.00 and in paying Plaintiff's attorney." Defendant was found in civil contempt.

*James, McElroy & Diehl, by William K. Diehl, Jr., for plaintiff appellee.*

*Cannon and Basinger, by Thomas R. Cannon, for defendant appellant.*

MARTIN (Harry C.), Judge.

Defendant contends that the trial court erred in denying his motion to reduce child support payments, in holding defendant in contempt, and in awarding plaintiff counsel fees.

It is established law in North Carolina that the court's findings of fact are conclusive if supported by any competent evidence and the judgment will be affirmed if the findings support the conclusions and judgment entered thereon. *In re Williamson*, 32 N.C. App. 616, 233 S.E. 2d 677 (1977). A careful reading of the record discloses that the evidence fully supports the findings of fact recited in the 13 February 1981 order.

The court based its conclusions of law upon a two-part inquiry: defendant's voluntary choice to reduce income and his

deliberate attempt to avoid responsibilities to his daughter which was not done in good faith.

Whether the court's findings of fact support its conclusions of law requires a reading of the applicable statutes. N.C.G.S. 50-13.7 (a) (Supp. 1981) provides the procedural mechanism permitting modification, as follows: "An order of a court of this State for support of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested." In *Gilmore v. Gilmore*, 42 N.C. App. 560, 257 S.E. 2d 116 (1979), it was held that the changed circumstances with which the courts are concerned are those which relate to child-oriented expenses. In *Daniels v. Hatcher*, 46 N.C. App. 481, 265 S.E. 2d 429, *cert. denied*, 301 N.C. 87 (1980), it was held that the court must make findings as to the relative abilities of the parties to provide support before ordering a change in the amount of support payments. *See also Ebron v. Ebron*, 40 N.C. App. 270, 252 S.E. 2d 235 (1979). Inevitably we are led to those considerations which gave rise to the award of child support in the first instance, as set forth in N.C.G.S. 50-13.4(c) (Supp. 1981):

> Payments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and homemaker contributions of each party, and other facts of the particular case.

Thus, it has been held under both N.C.G.S. 50-13.4 and 50-13.7 that a husband's ability to pay child support is normally determined by his actual income at the time the award is made or modified. If, however, there is a finding that the husband is deliberately depressing his income or otherwise acting in deliberate disregard of his obligation to provide reasonable support for his child, his capacity to earn may be made the basis of the award. Under these circumstances, his motion to reduce the amount of child support will be denied. *See Beall v. Beall*, 290 N.C. 669, 228 S.E. 2d 407 (1976); *Whitley v. Whitley*, 46 N.C. App. 810, 266 S.E. 2d 23 (1980); *Wachacha v. Wachacha*, 38 N.C. App. 504, 248 S.E. 2d 375 (1978). The "imposition of the earnings capaci-

ty rule must be based on evidence that tends to show the husband's actions resulting in reduction of his income were not taken in 'good faith.' " 38 N.C. App. at 509, 248 S.E. 2d at 378.

On the record before us, we find sufficient evidence to support the trial court's conclusion "that Defendant has deliberately attempted to avoid his financial responsibilities to his daughter and that he has not acted in good faith." Defendant is apparently an astute businessman. It was within his means, even upon his decision to forego all employment and become a full-time student, to provide adequately for his daughter under the terms of the April 1978 order. This he chose not to do. The trial court acted within its discretion in denying defendant's motion to reduce the support payments.

We agree with the trial court's conclusion that "Defendant has had at all times, and presently has the ability and capability of liquidating the outstanding child support arrearage of $4,000 and in paying Plaintiff's attorney." Defendant testified that in June of 1980 his net worth was almost $65,000. Defendant has $2,500 in an IRA account, owns furniture and other assets worth $17,500, and is the holder of notes totalling an amount of $40,000. In February of 1980, when defendant was paying reduced child support, the total assets of his company (his interest in which he sold shortly thereafter for $10,000) amounted to over one million dollars. Defendant's failure to pay the arrearage was willful. *Mauney v. Mauney*, 268 N.C. 254, 150 S.E. 2d 391 (1966).

Affirmed.

Judges MARTIN (Robert M.) and WHICHARD concur.