DIANA MAE PATAKY, PLAINTIFF v. KENNETH PATAKY, DEFENDANT

No. COA02-616

(Filed 16 September 2003)

## 1. Child Support, Custody, and Visitation— child support— unincorporated separation agreement—rebuttable presumption amount reasonable

The trial court erred by establishing an order of child support based on the presumptive child support guidelines without sufficient evidence of a change in conditions of need when the parties had executed an unincorporated separation agreement that included allowance for child support, because: (1) in an initial determination of child support where the parties have executed an unincorporated separation agreement that includes a provision for child support, the trial court should first apply a rebuttable presumption that the amount in the agreement is reasonable, and therefore, that application of the guidelines would be inappropriate; (2) the trial court should determine the actual needs of the child at the time of the hearings as compared to the provisions of the separation agreement; and (3) even in the context of these facts where there is no allowance for cash but for medical insurance coverage and after-school costs, the trial court must conduct a hearing and make findings and conclusions

related to the needs of the children at the time of the hearing and whether the presumption of reasonableness has been rebutted.

**2. Child Support, Custody, and Visitation— child support— capacity earnings rule**

The trial court erred in a child support case by applying the capacity earnings rule with respect to defendant father's income based on its determination that defendant voluntarily resigned from his job to return to graduate school and was therefore unemployed by choice, because: (1) evidence of a voluntary reduction in income is insufficient, without more, to support a finding of deliberate income depression or bad faith; (2) where a defendant foregoes all employment to become a full-time student, there is no bad faith provided defendant continues to adequately provide for his children; (3) defendant in this case decided to return to school only after the execution of the parties' separation agreement and before he was even aware that plaintiff would seek a child support order from the trial court that differed from the allowances provided in the agreement; and (4) defendant made arrangements to meet his financial obligations for the children once his employment ceased and he also cared for the children in excess of the agreement's required custodial duties.

Judge TIMMONS-GOODSON concurring in part and dissenting in part.

Appeal by defendant from judgment entered 30 November 2001 by Judge William L. Daisy in Guilford County District Court. Heard in the Court of Appeals 8 January 2003.

*Tate Law Offices, by C. Richard Tate, Jr., for plaintiff appellee.*

*Joyce L. Terres for defendant appellant.*

LEVINSON, Judge.

This appeal arises from an order establishing child support for the parties' minor children. The parties were married in 1988 and separated in 2000; two minor children were born of the marriage. The parties entered into a Separation Agreement and Property Settlement Agreement (the "Agreement") on 25 September 2000. The Agreement, which provided for joint legal and physical custody of the minor children, also stated that defendant:

will pay for the children's health insurance, after-school care, extra-curricular expenses, school supplies and clothing. In addition, Husband will maintain college savings funds for the children. Since both parties will be providing support for the children equally, no child support payments shall be paid by either party.

On 26 June 2001, plaintiff filed a complaint against defendant, alleging in pertinent part that defendant had violated the Agreement by failing to provide equal financial support for the children, or to pay for the children's clothing. She requested that permanent child support be set at a reasonable amount.

Pursuant to the Agreement, the parties share physical custody of the children on an every-other-week basis. Although defendant's formal education and degrees were in the liberal arts and education, during the parties' marriage he worked as a computer programmer, earning approximately $65,000 a year. However, after the parties entered into the Agreement but before the filing of plaintiff's complaint, defendant gave notice of his intention to quit his job to pursue graduate education in a field more closely related to his formal education. Defendant testified that this plan was discussed between the parties prior to execution of the Agreement. He planned to continue working until plaintiff had finished with school, and then return to school and obtain the qualifications for employment as a school counselor. Plaintiff graduated with "a two-year degree at GTCC" in May 2001, and defendant quit his job and returned to school about two months later.

Defendant further testified that he had developed a plan to meet his financial obligations to his children under the Agreement while he was in school. In addition to his scheduled custody of the children every other week, defendant cared for the children when plaintiff attended evening classes and on "dozens of occasions" when plaintiff was not available. During trial, the judge held that "[t]he separation agreement is too vague to be enforced with regard to the purchase of clothing." Accordingly, the court did not allow either party to introduce receipts or other evidence documenting the amount each had spent on clothing. Defendant testified he had paid for the children's clothing and health insurance.

Plaintiff testified that she was a "stay-at-home mom." She also testified that she worked part-time as a nanny, worked in a spa as a massage therapist, and was studying for an "aesthetics" license,

which would qualify her to provide other salon services such as body wraps and facials.

The trial court found, in part, the following:

(4)  The parties' separation agreement provided that the parties would alternate physical custody of the children and provided that Defendant would pay for the children's health insurance, after-school care, extra-curricular activities and clothing and that neither party would pay child support.

. . . .

(6)  That at the time of the filing of this action on June 26, 2001, the Defendant was employed as a computer systems manager with the United States Federal Courts in Greensboro, earning a salary of approximately $65,000.00 per year. Defendant had notified the Plaintiff prior to the Plaintiff's filing the Complaint, that he intended to leave this position because he had been accepted in a masters' degree program at the University of North Carolina at Greensboro. Plaintiff objected to the Defendant's leaving his employment.

(7)  Defendant had applied to graduate school in December 2000 and was notified that he had been accepted in a masters' program for school counselors in the spring of 2001.

(8)  Defendant's last day of work was July 12, 2001. Defendant voluntarily resigned in order to become a full-time student. Defendant testified that he is now in school full-time and is redirecting his career towards being a school counselor in which career he would earn a significantly lower wage. Defendant has a master's degree in education and is a highly intelligent individual and had performed satisfactorily at his prior position. Defendant's expected date of graduation is May of 2003.

(9)  Plaintiff produced an e-mail sent to her in November 2001, by the defendant in which the Defendant stated that he is "unemployed by choice."

(10) Defendant has deliberately suppressed his income and acted in deliberate disregard of his obligation to provide reasonable support for the minor children, and therefore the Court attributes income of $65,000.00 per year to the Defendant

based upon his earning capacity, or $5416 per monthly gross wages.

(11) The Defendant currently pays for health insurance for the two boys with a monthly cost of approximately $110 per month and the Defendant is given credit for this expense on the Worksheet B calculation.

(12) Plaintiff's maximum gross wage during the past several years is $360.00 per week, which she is presently earning or hopes to earn as a licensed massage therapist. . . . Plaintiff is paid per massage and averages about ten one-hour massages per week. Plaintiff did not work during the majority of the marriage of the parties.

(13) Plaintiff has not sought any other employment since the parties' separation since she is attempting to build her massage business. Plaintiff has recently re-initiated efforts towards a nursing degree in an effort to increase her earnings.

(14) Both parties owe a duty of support to the minor children of the parties, and should be required to pay a reasonable sum for the support of the minor children.

Based on these findings, the trial court concluded that defendant deliberately depressed his income and acted in deliberate disregard of his obligation to provide reasonable support for the minor children. Applying Worksheet B of the North Carolina Child Support Guidelines, the trial court ordered defendant to pay $500 per month in child support payments.

Defendant argues the trial court erred in (1) establishing an order of child support based on the presumptive child support guidelines without sufficient evidence of a "change in conditions or need" since the execution of the parties' Agreement, and (2) applying the capacity earnings rule with respect to his income.

## I. RELATIONSHIP BETWEEN SEPARATION AGREEMENT AND CHILD SUPPORT GUIDELINES

[1] The central issue for our determination is the impact, if any, of an unincorporated separation agreement that includes allowance for child support on a subsequent claim for child support. Since the amendment of N.C.G.S. § 50-13.4 in 1989, see 1989 ALS 529 (1989), which created the current child support guideline structure, no appellate decision has squarely addressed this issue. *See, e.g., Rose v. Rose,*

108 N.C. App. 90, 422 S.E.2d 446 (1992); *Powers v. Parisher*, 104 N.C. App. 400, 409 S.E.2d 725 (1991), *appeal dismissed and disc. review denied*, 331 N.C. 286, 417 S.E.2d 254 (1992). Accordingly, we first review the pertinent statutory and common law.

## A. BACKGROUND

### 1. Statutory Law

Our legislature provided for judicial awards of child support as early as 1943:

> After the filing of a complaint in any action for divorce, whether from the bonds of matrimony or from bed and board, both before and after final judgment therein, it is lawful for the judge of the court in which such application is or was pending to make such orders respecting the care, custody, tuition and maintenance of the minor children of the marriage as may be proper, and from time to time to modify or vacate such orders. . . .

N.C.G.S. § 50-13 (1943) (repealed 1967); *see Griffin v. Griffin*, 237 N.C. 404, 411; 75 S.E.2d 133, 138-39 (1953).

In 1967, the General Assembly replaced G.S. § 50-13 with N.C.G.S. § 50-13.4(c), which provided, in pertinent part:

> Payments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, and other facts of the particular case.

This first sentence of G.S. § 50-13.4(c) has remained substantially the same since 1967. *Compare* N.C.G.S. § 50-13.4(c) (2001) (adding "child care and homemaker contributions of each party" as considerations).

In 1975, pursuant to Title 42, Chapter 7, Title IV, Part D of the Social Security Act ("Title IV-D"), Congress established the Child Support Enforcement Program ("CSE program"). 93 P.L. 647, 88 Stat. 2337 (1975); *see Kansas v. United States*, 214 F.3d 1196 (10th Cir.), *cert. denied*, 531 U.S. 1035, 148 L. Ed. 2d 533 (2000). The CSE program is a voluntary program "[f]or the purpose of enforcing the support obligations owed by absent parents to their children, locating absent parents, establishing paternity, and obtaining child support" in which states, in exchange for federal monies to operate child support enforcement regimens and provide AFDC (now TANF) dollars for eli-

gible parents, agree to operate the program in accordance with federal law. 42 U.S.C. § 651 (2001); *see Garrison v. Connor*, 122 N.C. App. 702, 471 S.E.2d 644 (1996).

A 1984 amendment to Title IV-D required states participating in the CSE program to enact guidelines for determination of child support award amounts. *See* 98 P.L. 378, 98 Stat. 1305 (1984) (effective 1 October 1986). These guidelines could be "established by law or by a judicial conference or other mechanism as may be appropriate in that state." *Id.* To comply with Title IV-D, North Carolina amended G.S. § 50-13.4 by adding N.C.G.S. § 50-13.4(c1), which directed "[t]he Conference of Chief District Judges [to] prescribe uniform statewide advisory guidelines for the computation of child support obligations[.]" N.C.G.S. § 50-13.4(c1) (1987).

As part of The Family Support Act of 1988, Congress again amended Title IV-D to state in pertinent part:

> There shall be a rebuttable presumption, in any judicial or administrative proceeding for the award of child support, that the amount of the award which would result from the application of such guidelines is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case, as determined under criteria established by the State, shall be sufficient to rebut the presumption in that case.

100 P.L. 485; 102 Stat. 2343, 42 U.S.C. § 667(b)(2) (2003). Thus, while states that adopted this requirement would establish a rebuttable presumption that the sum determined by application of a State's generalized guidelines was the proper amount of child support, they would retain the authority to establish criteria for deviation from the guidelines. To comply with this mandate, North Carolina amended G.S. § 50-13.4 in 1989. In addition to requiring the Conference of Chief District Court Judges to establish child support guidelines, *see* G.S. § 50-13.4(c1), the following pertinent language was added to G.S. § 50-13.4(c):

> The court shall determine the amount of child support payments by applying the presumptive guidelines established pursuant to subsection (c1) of this section. However, upon request of any party, the Court shall hear evidence, and from the evidence, find the facts relating to the reasonable needs of the child for support and the relative ability of each parent to provide support. If, after

considering the evidence, the Court finds by the greater weight of the evidence that the application of the guidelines would not meet or would exceed the reasonable needs of the child considering the relative ability of each parent to provide support or would be otherwise unjust or inappropriate the Court may vary from the guidelines. If the court orders an amount other than the amount determined by application of the presumptive guidelines, the court shall make findings of fact as to the criteria that justify varying from the guidelines and the basis for the amount ordered.

Our legislature thus created an avenue for the court to award child support in an amount different from that dictated by the official child support guidelines, provided the court determined that application of the guidelines would be "unjust or inappropriate." Further, in the absence of a request from the parties, the court may enter such an order on its own initiative. *Biggs v. Greer*, 136 N.C. App. 294, 297, 524 S.E.2d 577, 581 (2000) ("upon a party's request . . . or the court's decision on its own initiative to deviate from the presumptive amounts . . . the court must hear evidence and find facts related to the reasonable needs of the child for support").

### 2. Common Law

"A separation agreement is a contract between the parties and the court is without power to modify it except (1) to provide for adequate support for minor children, and (2) with the mutual consent of the parties thereto where rights of third parties have not intervened." *McKaughn v. McKaughn*, 29 N.C. App. 702, 705, 225 S.E.2d 616, 618 (1976). However, our Courts have been quick to note:

[N]o agreement or contract between husband and wife will serve to deprive the courts of their inherent as well as their statutory authority to protect the interests and provide for the welfare of infants. They may bind themselves by a separation agreement or by a consent judgment, but they cannot thus withdraw children of the marriage from the protective custody of the court.

*Fuchs v. Fuchs*, 260 N.C. 635, 639, 133 S.E.2d 487, 491 (1963); *see also Winborne v. Winborne*, 41 N.C. App. 756, 760, 255 S.E.2d 640, 643, *cert. denied*, 298 N.C. 305, 259 S.E.2d 918 (1979).

North Carolina common law dictates that "where parties to a separation agreement agree upon the amount for the support and maintenance of their minor children, there is a presumption in the absence

of evidence to the contrary, that the amount mutually agreed upon is just and reasonable[.]" *Fuchs*, 260 N.C. at 639, 133 S.E.2d at 491. The holding of *Fuchs* was reinforced in *Williams v. Williams*, 261 N.C. 48, 59, 134 S.E.2d 227, 235 (1964), filed one month after *Fuchs*, which cited *Fuchs* for the rule that "*in the absence of evidence to the contrary*, there is a presumption that the amount mutually agreed upon in a deed of separation is just and reasonable and that a judge is not warranted in ordering· an increase in the absence of any evidence of the need of such increase." In applying the rule of *Fuchs-Williams*, this Court has held that a party seeking an initial judicial determination of child support where the parties have executed an unincorporated separation agreement need not show changed circumstances between the time of the separation agreement and the hearing, but must instead:

> show the amount of support necessary to meet the reasonable needs of the child[ren] *at the time of the hearing*. Should the evidence establish, giving due regard to the factors contained in G.S. 50-13.4(b) and (c) [as they existed prior to their amendment in 1989], that such amount substantially exceeds the amount agreed upon in the separation agreement, such evidence would necessarily rebut the presumption of reasonableness . . . . *Absent such a showing, the agreement of the parties will be deemed to be reasonable*. While evidence of a change in circumstances, involving a comparison of actual expenditures and other circumstances between the time of the separation agreement and the date of the hearing, may be relevant to the issue of reasonableness, such evidence is not an absolute requirement to justify an increase.

*Boyd v. Boyd*, 81 N.C. App. 71, 76, 343 S.E.2d 581, 585 (1986) (emphasis added).

## B. ANALYSIS

We next turn to the question of the impact, if any, an unincorporated separation agreement that includes allowance for child support will have in a later claim for child support. In her brief before this Court, plaintiff agrees with defendant's contention "that there is a presumption that a mutually agreed upon amount [in an unincorporated separation agreement] is just and reasonable." Plaintiff argues, however, that the record contains "overwhelming" evidence that the provision in the separation agreement was not reasonable. On this basis, plaintiff contends that the court did not err in applying the presumptive child support guidelines. Defendant, on the other hand, con-

tends the trial court erred by not applying the presumption dictated by *Fuchs-Williams*, that the separation agreement established a reasonable amount of child support, and by not making findings and conclusions related to these cases. Neither party argues that the principles enunciated in *Fuchs-Williams* are no longer effective; however, this Court will examine for the first time their continued viability in light of the presumptive child support amendments to G.S. § 50-13.4.[1]

Application of relevant statutes and case law might support our adoption of either of two differing approaches to the establishment of child support in the presence of a prior, unincorporated separation agreement. The first interpretation would require the court to apply the presumptive guidelines, and to consider the separation agreement and its child support allowance *only* in its determination (upon motion of either party or by the court *sua sponte*) of whether to deviate from those guidelines. The second approach would require application of the *Fuchs-Williams* principles, and therefore would require the court to examine the children's needs at the time of the hearing compared to the amount provided in the separation agreement. Under this second approach, the court would not apply the presumptive guidelines unless the claimant overcomes the presumption of reasonableness established by *Fuchs-Williams* and applied more definitively in *Boyd*. We address each of these approaches in turn.

1:  Interpretation that prior separation agreement is relevant only to possible deviation from presumptive guidelines.

If one views G.S. § 50-13.4(c) as an unambiguous directive that the "court shall [always, without exception] determine the amount of child support payments by applying the presumptive guidelines," then the court would not be required to consider a prior unincorporated agreement or the amount it provides for child support. This interpretation is supported by the legislature's use of the term "presumptive guidelines," whose plain meaning might suggest that an amount properly determined under those guidelines is presumptively reasonable and cannot be disturbed on appeal. Moreover, because the trial court must consider deviation from the guideline amount if requested to do so by either party, the terms of a separation agreement would still have a role to play: the court could properly consider the agreement and the child support allowances it includes in deciding whether "application of the guidelines would not meet or would exceed the

---

1. Because neither party raises any constitutional arguments on appeal, none are addressed herein.

reasonable needs of the child . . . or would be otherwise unjust or inappropriate . . . ." G.S. § 50-13.4(c).

Furthermore, one also might argue that, because *Fuchs-Williams* conflicts with pertinent statutory language to the contrary, *stare decisis* is inapplicable. *See Webb v. McKeel,* 144 N.C. App. 381, 384, 551 S.E.2d 440, 442, *disc. review denied,* 354 N.C. 371, 557 S.E.2d 537 (2001). Clearly, the parties' right to contract and to execute agreements they believe will adequately provide for their children is of elemental importance. However, the legislature's intent in drafting child support statutes was to ensure the amounts determined by the guidelines presumptively meet the reasonable needs of children. In addition, if a court orders child support payments in an amount that is different from what was provided by the separation agreement, the parent who is made to pay more (or receive less) theoretically[2] could recover the difference in contract. *See, e.g., Bottomley v. Bottomley,* 82 N.C. App. 231, 235-36, 346 S.E.2d 317, 320 (1986).

The legal arguments in favor of the first approach are not without substantial force. Further, the ease with which the first approach lends itself to practical application might make the outcomes of child support actions more predictable. However, for the following reasons, we hold that the *Fuchs-Williams* principles are still applicable and require our courts to examine cases such as the one *sub judice* differently from those in which no separation agreement is present.

2: Interpretation that The General Assembly has not abrogated the common law principles in *Fuchs-Williams*.

N.C.G.S. § 4-1 (2001), Common law declared to be in force, provides:

All such parts of the common law as were heretofore in force and use within this State, or so much of the common law as is not destructive of, or repugnant to, or inconsistent with, the freedom

---

2. However, Professor Sally Sharp, a respected scholar, provides an instructive *caveat*:

This theoretical preservation of the integrity of the parties' agreement is largely illusory, however, because, much like modifiable specific performance orders for the enforcement of "contract only" alimony rights, surviving contract rights to child support are likely to be of little practical value to the obligee.

Sally Burnett Sharp, *Semantics as Jurisprudence: The Elevation of Form Over Substance in the Treatment of Separation Agreements in North Carolina,* 69 N.C.L. Rev. 319, 354 (1991).

and independence of this State and the form of government therein established, and which has not been otherwise provided for in whole or in part, *not abrogated, repealed, or become obsolete, are hereby declared to be in full force within this State.*

(emphasis added). As the *Fuchs-Williams* principles have not become "obsolete," *see Forsyth Memorial Hospital v. Chisholm,* 342 N.C. 616, 467 S.E.2d 88 (1996), and have not been "repealed," the dispositive issue is whether the amendments to G.S. § 50-13.4 "abrogated" the same. *Rosero v. Blake,* 357 N.C. 193, 194, 581 S.E.2d 41, 41 (2003) ("common-law rule that custody of an illegitimate child presumptively vests in the mother has been abrogated by statutory and case law").

Over the course of approximately forty years and notwithstanding at least five amendments to what originated as G.S. § 50-13, the General Assembly has never explicitly altered the analysis required by *Fuchs-Williams.* Nor has the North Carolina Supreme Court ruled that the principles enunciated in *Fuchs-Williams* are now inapplicable. "This Court is bound by precedent of the North Carolina Supreme Court." *State v. Gillis,* 158 N.C. App. 48, 53, 580 S.E.2d 32, 36 (2003) (citing *Forsyth Memorial Hospital,* 342 N.C. at 620, 467 S.E.2d at 90, and *Calloway v. Memorial Mission Hosp.,* 137 N.C. App. 480, 482, 528 S.E.2d 397, 399 (2000)). Therefore, unless we determine that these principles have been abrogated by statute, the rebuttable presumption that a separation agreement has properly provided for child support must be harmonized with the provisions of N.C.G.S. § 50-13.4(c1).

When the *Fuchs* and *Williams* opinions were issued by the Court, our trial courts routinely entered orders for the support of children. We note that (1) neither the present statutes nor their statutory predecessors refer to unincorporated separation agreements, and (2) the statutory considerations listed in the first sentence of G.S. § 50-13.4(c) remained substantially unchanged by the 1987 and 1989 amendments to G.S. § 50-13.4.[3] From this we may safely infer that the legislature had no explicit intention to overrule or abrogate *Fuchs-Williams.* Within the statutory framework, the North Carolina Supreme Court established a two-step process in claims for child support in the presence of a prior, unincorporated agreement. Our trial

---

3. The 1987 G.S. § 50-13.4(c) amendment did not include any "rebuttable presumption" language but, instead, broadly addressed the "computation of child support obligations of each parent as provided in Chapter 50 or elsewhere in the General Statutes."

courts were required to *first* determine the current amount necessary to meet the needs of the children and, if this amount "substantially exceeds" the amount provided in the agreement, this would rebut the presumption that the amount in the separation agreement was reasonable. *See Boyd*, 81 N.C. App. 76, 343 S.E.2d 585. In the absence of such a showing, affording "due regard to the factors contained in G.S. § 50-13.4(b) and (c)," the court was not allowed to change the amount of child support from what was set forth in the separation agreement. *Id.* (referring to statutory factors existing in 1986).

We also note that the presumptive guidelines provisions were not adopted to address circumstances like those in the present case, but were enacted in response to efforts by the federal government to cut welfare rolls:

> The primary justification for this increased federal role can be discerned from the relevant legislative history. Congress was concerned about the 'rapid and uncontrolled growth' of expenditures under the Aid to Families with Dependent Children (AFDC) program. In large measure, such growth could be attributed to the failure of the states to ensure that individuals legally obligated to provide child support actually did so. Greater efforts in this regard by both the federal and state governments, it was believed, would reduce overall welfare costs.

*State of N.J. v. Department of Health & Human Serv.*, 670 F.2d 1262, 1265 (3d Cir. 1981).

While the guidelines generally must be employed in actions for child support, G.S. § 50-13.4, *et seq.*, the statute's silence with respect to prior, unincorporated agreements suggests that the legislature had no intention of abrogating the holdings of *Fuchs-Williams. See Yates v. New South Pizza, Ltd.*, 330 N.C. 790, 808, 412 S.E.2d 666, 677 (1992) ("Absent clear legislative intent to the contrary, we should presume that the legislature was aware of and intended to retain the longstanding common law rule enunciated in [earlier cases]"); *Ridge Community Investors, Inc. v. Berry*, 293 N.C. 688, 695, 239 S.E.2d 566, 570 (1977) ("In interpreting statutes, . . . it is always presumed that the Legislature acted with full knowledge of prior and existing law."). Moreover, we assess statutory language, stating the guidelines "shall" be utilized to determine awards of child support, in the context of the entire statute which also authorizes the trial court to vary from those guidelines upon a finding that their application would be "inappropriate" in a given case. We conclude that where the parties

have executed a separation agreement that includes provision for child support, the court must apply a rebuttable presumption that the amount set forth is just and reasonable and therefore application of the guidelines would be inappropriate. Accordingly, before it applies the child support guidelines, the trial court must first consider the child support allowances in a separation agreement between the parties.

It bears repeating that, notwithstanding several amendments to other portions of the statute, the General Assembly has left intact the quantitative and qualitative considerations in the first sentence of G.S. § 50-13.4(c) ("Payments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to . . . [the] facts of the particular case."). We also note again that the General Assembly amended G.S. § 50-13.4, to include the "rebuttable presumption" language mandated by Congress' amendment to Title IV-D in 1988, in an effort to secure the continued receipt of federal dollars for the administration of its child support enforcement program and AFDC (now TANF).[4] *See* 42 U.S.C. § 667(b)(2). Against this backdrop, it is not surprising that the guidelines employ a "one size fits all" approach to calculation of the proper amount of child support.

We conclude that the guideline amount is not competent evidence of the *actual* amount required to meet the needs of the children at the time of the hearing. Doing so would strip *Fuchs-Williams* of all but illusory meaning, and diminish to little or no consequence the quantitative and qualitative factors enumerated in the first sentence of G.S. § 50-13.4(c). Such an approach would, in many cases, reduce to useless surplusage the considerations enumerated in the first sentence in G.S. 50-13.4(c).[5] *See Stephenson v. Bartlett*, 355 N.C. 354, 408, 562 S.E.2d 377, 413 (2002):

[North Carolina follows a] long-standing rule of construction that a statute must be "construed, if possible, so that none of its pro-

---

4. The Aid to Families with Dependent Children (AFDC) program was replaced when Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA). AFDC dollars were replaced with Temporary Assistance to Needy Families (TANF). *Kansas v. United States*, 214 F.3d 1196, 1197 (10th Cir. 2000).

5. That the same considerations are repeated verbatim in G.S. § 50-13.4(c1) and therefore instruct the Conference of Chief District Court Judges on what to consider when establishing presumptive child support guidelines does not alter our view of this feature of the statute.

visions shall be rendered useless or redundant. It is presumed that the legislature intended each portion to be given full effect and did not intend any provision to be mere surplusage."

(quoting *Porsh Builders, Inc. v. City of Winston-Salem,* 302 N.C. 550, 556, 276 S.E.2d 443, 447 (1981)). Furthermore, because the trial court is not *required* to deviate from the guidelines no matter how compelling the reasons to do so, the first approach, as discussed in section B1 of this opinion, would allow the *Fuchs-Williams* presumption of reasonableness to be easily cast aside by the presiding judge. *See* G.S. § 50-13.4(c) (court *"may* vary from the guidelines") (emphasis added).

To accord sufficient weight to parties' separation agreements, as our common law directs, the benchmark for comparison must be the amount needed for the children at the time of the hearing, compared with that provided in the agreement. *See Boyd,* 81 N.C. App. 76, 343 S.E.2d 585. Further, "in the absence of evidence to the contrary," the court must respect a presumption that "the amount mutually agreed upon is just and reasonable." *Fuchs,* 260 N.C. at 639, 133 S.E.2d at 491; *see also Williams,* 261 N.C. at 59, 134 S.E.2d at 235.

We recognize that no agreement between a husband and wife can fully deprive the courts of their authority to protect the best interests and welfare of the minor children. *Winborne,* 41 N.C. App. at 760, 255 S.E.2d at 643. Thus, application of *Fuchs-Williams* neither bankrupts the court's ability to protect the needs of children, nor creates an insurmountable burden for parents seeking redress from the court. The court's guiding principle must always be the child's best interests. The unthinking application of the guidelines, without first considering the parents' agreement, short-changes the very standard the trial court is charged with applying—the best interests of the child. The unthinking acceptance of parties' separation agreements would likewise impair a court's determination of the best interests of the child. *Fuchs-Williams* requires consideration of parents' contractual determinations and fashions a logical balance between the proper role of such agreements and the court's obligations regarding children within its jurisdiction.

The notion, that parents who have agreed on how best to meet the needs of their children may expect to have the court ignore their agreement, is an idea too counterintuitive and illogical to be countenanced by this Court.[6] Parents generally are in the best position to

6. That parents can choose to incorporate their separation agreement into a divorce decree, and therefore subject modification efforts to a substantial change of

determine their children's needs. Accordingly, we attach significance to parents' *individualized* efforts to structure their children's development (oftentimes with the benefit of hindsight and years of making financial and economic decisions for them), as compared with the unfitted benchmark so broadly drawn by the statutory guidelines. We hold *Fuchs-Williams* is applicable and therefore encourage judicial review of a vital resource, the parents' agreement, that speaks directly to the court's concern, the welfare of children.

Our law should, when practicable, encourage the resolution of family issues without resort to court interference. N.C.G.S. § 50-41 (North Carolina Family Law Arbitration Act); *see Bromhal v. Stott*, 341 N.C. 702, 462 S.E.2d 219 (1995). To do otherwise runs contrary to our long standing jurisprudential doctrines. "Separation or marital settlement agreements are, quite correctly, said to minimize the psychological and economic costs of divorce, to create better prospects for post-divorce cooperation between the parties, to lessen the impact of divorce upon children, and to promote judicial economy." Sharp, *supra*, at 319-20. If separation agreements are accorded no deference, parties who enter into them will have no protection from a party who agrees to a support amount but later seeks redress from the courts simply because he or she is unhappy with the decision to enter into the contract.[7] However, the *Fuchs-Williams* presumption generally affords both parties a logical measure of protection—that although the court is not divested of its ability to protect the needs of children, their child support arrangement will be given appropriate consideration by the court.

With all these observations in mind, we hold the General Assembly has not abrogated the two-step process required by *Fuchs-Williams* and, further, that employment of *Fuchs-Williams* comports

---

circumstances standard, cannot be determinative of the issue before the court. Parents should be free to evaluate the relative advantages and disadvantages to incorporation of an agreement. *See* N.C.G.S. § 50-13.7 (change of circumstances).

7. We fail to see the value in encouraging the Family Bar to counsel their clients that, unless they provide for child support allowances in separation agreements that mirror the guideline amount, they can have little confidence the allowance will be given serious consideration by the District Court in a later claim for child support. The continued viability of *Fuchs-Williams* enables family lawyers to advise parents that what they believe meet the needs of their children will enjoy presumptive reasonableness protection in a subsequent claim. This is especially compelling where, as here, one parent seeks an order of child support merely nine (9) months after execution of an agreement.

with applicable North Carolina statutes and relevant federal mandates that helped impact our child support statutes. Thus, in an initial determination of child support where the parties have executed an unincorporated separation agreement that includes provision for child support, the court should first apply a rebuttable presumption that the amount in the agreement is reasonable and, therefore, that application of the guidelines would be "inappropriate." The court should determine the actual needs of the child at the time of the hearing, as compared to the provisions of the separation agreement. If the presumption of reasonableness is not rebutted, the court should enter an order in the separation agreement amount and make a finding that application of the guidelines would be inappropriate.[8] If, however, the court determines by the greater weight of the evidence that the presumption of reasonableness afforded the separation agreement allowance has been rebutted, taking into account the needs of the children existing at the time of the hearing and considering the factors enumerated in the first sentence of G.S. § 50-13.4(c), the court then looks to the presumptive guidelines established through operation of G.S. § 50-13.4(c1) and the court may nonetheless deviate if, upon motion of either party or by the court *sua sponte*, it determines application of the guidelines "would not meet or would exceed the needs of the child . . . or would be otherwise unjust or inappropriate."

A brief review of the facts and circumstances of the instant case illustrates the importance of *Fuchs-Williams*. The Agreement provided for a shared custody arrangement, with the children alternating weeks between each parent's home. The parents agreed defendant would provide health insurance and pay the costs of after-school care, extracurricular expenses, school supplies, and clothing. Unlike many other agreements, no payment of cash support was required. Nine months later, plaintiff filed an action for child support contemporaneous with defendant's intention to leave his current employment and return to school. Notwithstanding defendant's satisfactory arrangements to continue to meet his custodial and financial obligations pursuant to the Agreement—and plaintiff's apparent awareness long before execution of the Agreement that defendant intended to return to school—plaintiff sought an order for child support from the court. Even in the context of these facts, where there is no allowance

---

8. As the issue is not raised on appeal, we do not address whether the court may enter an order of support it would not, *ab initio*, be authorized to enter (*e.g.*, college tuition or for a duration of the child's life in excess of that provided in G.S. § 50-13.4(c)) in the absence of a separation agreement.

for cash but, *inter alia*, medical insurance coverage and after-school care costs instead, the trial court must conduct a hearing and make findings and conclusions consistent with this opinion.[9] Here, the trial court neither made findings related to the needs of the children at the time of the hearing nor concluded whether the presumption of reasonableness had been rebutted. Despite plaintiff's arguments to the contrary that a whole-record review by this Court would support these essential findings, this cannot substitute for such findings by the trial court.

We reverse and remand the trial court's order. We address another assignment of error because the same issue may be relevant upon remand.

## II. IMPUTATION OF INCOME

[2] Defendant next contends the trial court erred in imputing to him the income he made as a computer programmer, his last job prior to returning to school. Though plaintiff agrees with defendant that there must be a showing of bad faith for the court to employ the earnings capacity rule, she argues the evidence and findings support the same.

Normally, a party's ability to pay child support "is determined by that [party's] income at the time the award is made." *Atwell v. Atwell*, 74 N.C. App. 231, 235, 328 S.E.2d 47, 50 (1985). *See also Askew v. Askew*, 119 N.C. App. 242, 458 S.E.2d 217 (1995). However, capacity to earn may be the basis for an award where the party "deliberately depressed his income or deliberately acted in disregard of his obligation to provide support." *Sharpe v. Nobles*, 127 N.C. App. 705, 708, 493 S.E.2d 288, 290 (1997) (citing *Askew, id.*). *See also Schroader v. Schroader*, 120 N.C. App. 790, 463 S.E.2d 790 (1995). Before earning capacity may be used as the basis of an award, there must be a showing that the actions which reduced the party's income were taken in bad faith, to avoid family responsibilities. *Bowers v. Bowers*, 141 N.C. App. 729, 732, 541 S.E.2d 508, 510 (2001) (noting rule that absent a finding that defendant deliberately suppressed his income to avoid his support obligation, the trial court could not employ defendant's earning capacity in determining child support); *Sharpe*, 127 N.C. App.

---

9. Our district court judges may be concerned about the time required in these cases. In practice, however, our holding will ordinarily require no more than that required were the evidence considered only upon a motion to deviate. In other words, the evidence supporting a parent's motion to deviate will oftentimes mirror that required by employing the *Fuchs-Williams* principles.

708, 493 S.E.2d at 290 (holding that father's failure to look for higher paying job after his position was eliminated was not deliberate suppression of income or other bad faith, and thus, his earning capacity could not be used to impute income to him for determining child support); *see also Cook v. Cook,* 159 N.C. App. 657, 583 S.E.2d 696 (2003), and *King v. King,* 153 N.C. App. 181, 185, 568 S.E.2d 864, 866 (2002).

Here, the trial court attributed income to defendant upon concluding that defendant deliberately suppressed his income in disregard of his parental obligations. The trial court apparently based its conclusion on the fact that defendant voluntarily resigned from his job to return to graduate school and was "unemployed by choice." It specifically found that defendant had sent an e-mail to plaintiff in which defendant stated he was "unemployed by choice."

This Court has previously found that evidence of a voluntary reduction in income is insufficient, without more, to support a finding of deliberate income depression or bad faith. *King,* 153 N.C. App. at 185, 568 S.E.2d at 866; *Bowers,* 141 N.C. App. at 732, 541 S.E.2d at 510; *Sharpe,* 127 N.C. App. at 709, 493 S.E.2d at 290. Furthermore, this Court has suggested that where a defendant foregoes "all employment [to] become a full-time student" there may not be bad faith provided he continues to adequately provide for his children. *See Goodhouse v. DeFravio,* 57 N.C. App. 124, 128, 290 S.E.2d 751, 754 (1982). Rather, "[t]he dispositive issue is whether a party is motivated by a desire to avoid his reasonable support obligations." *Wolf v. Wolf,* 151 N.C. App. 523, 527, 566 S.E.2d 516, 519 (2002) (holding the trial court did not err in imputing income where defendant voluntarily remained unemployed "in conscious and reckless disregard" of his duty to provide support to his children); *Wachacha v. Wachacha,* 38 N.C. App. 504, 508, 248 S.E.2d 375, 378 (1978) (holding there was insufficient evidence to support the trial court's decision to impute income where, although defendant voluntarily surrendered his job so that he could return to college, he arranged to meet his support and alimony obligations from his income under the GI bill).

A party is not deemed to be acting in bad faith only because he is unemployed by choice. *See King,* 153 N.C. App. at 185, 568 S.E.2d at 864; *Bowers,* 141 N.C. App. at 732, 541 S.E.2d at 510; *Sharpe,* 127 N.C. App. at 709, 493 S.E.2d at 290. We recognize that the determination of bad faith, in conjunction with the suppression of income, is best made on a case by case analysis by the trial court. Here, however, the record wholly lacks evidence of bad faith.

Defendant's e-mail to plaintiff, although it accurately described his status as a voluntary student rather than the victim of employment lay-offs, does not provide any information about his motivation for returning to school. While the attendant intentions and motivations surrounding such a statement are properly within the purview of the trial court, the e-mail, standing alone and wholly unsupported by record evidence probative of bad faith, is insufficient to support a finding of bad faith.

Moreover, defendant financially supported his children consistent with the Agreement. Significantly, he decided to return to school only *after* the execution of the Agreement and *before* he was even aware that plaintiff would seek a child support order from the court that differed from the allowances provided in the Agreement. He also testified that he made arrangements to meet his financial obligations for the children once his employment ceased and that he exercised not only his every-other week custody of the children but also intermittently cared for the children when plaintiff could not, in excess of the Agreement's required custodial duties.

The trial court's order is reversed and remanded with instructions to conduct a hearing and award child support not inconsistent with this opinion.

Reversed and remanded.

Judge TIMMONS-GOODSON concurs in the result in part and dissents in part.

Judge TYSON concurs.

TIMMONS-GOODSON, Judge, concurring in the result in part and dissenting in part.

I agree that the order of the trial court contains insufficient findings regarding whether the separation agreement adequately protects the children's interests and that the issue should therefore be remanded for entry of appropriate findings.

Having resolved this dispositive issue, the majority purports to hold that "there is not a showing that defendant deliberately depressed his income or otherwise acted in bad faith." This statement is unnecessary, however, for resolution of the case and may therefore be regarded as *obiter dictum. See Debnam v. N.C. Dept. of*

*Correction,* 334 N.C. 380, 386, 432 S.E.2d 324, 329 (1993) (noting that "statements in the nature of *obiter dictum* are not binding authority"). If this issue were necessary to the resolution of the case, I would hold that there was sufficient evidence in the record to support the trial court's finding that "[d]efendant has deliberately suppressed his income and acted in deliberate disregard of his obligation to provide reasonable support for the minor children." To the extent that the majority opinion purports to hold otherwise, I respectfully dissent.

The standard of review for findings made by a trial court sitting without a jury is whether any competent evidence exists in the record to support said findings. *Hollerbach v. Hollerbach,* 90 N.C. App. 384, 387, 368 S.E.2d 413, 415 (1988), *see also Smith v. Smith,* 103 N.C. App. 488, 490-91, 405 S.E.2d 912, 913 (1991) (stating that "[e]vidence must support findings; findings must support conclusions; conclusions must support the judgment."). The trial court's findings of fact are conclusive if they are supported by competent evidence. *Johnson v. Johnson,* 45 N.C. App. 644, 647, 263 S.E.2d 822, 825 (1980). A trial court's findings are based upon a holistic analysis of the evidence presented in light of the applicable laws. This Court should not disturb such findings of fact, even though there may be evidence to the contrary. *Associates, Inc. v. Myerly and Equipment Co. v. Myerly,* 29 N.C. App. 85, 89, 223 S.E.2d 545, 548, *appeal dismissed,* 290 N.C. 94, 225 S.E.2d 323 (1976).

On the issue of reduction of income, the trial court found as fact and concluded as a matter of law that defendant had deliberately suppressed his income and acted in deliberate disregard of his obligation to provide reasonable support for the minor children. This finding and conclusion is supported by evidence that the defendant is, in his own words, "unemployed by choice." The court found that defendant voluntarily resigned his $65,000 salaried position in order to become a full-time student, and that defendant has redirected his career towards being a school counselor in which career he would earn a significantly lower wage.

This Court recently decided a case with similar facts. In *Mason v. Erwin,* the defendant entered into a voluntary child support agreement with the mother of his child. Several years later, the defendant's wife won a prize in the lottery and soon thereafter the defendant entered into early retirement. The defendant's retirement pension amounted to half of the wages that he was earning when he was employed. This Court held that the trial court's findings that (1) the

defendant's testimony was unpersuasive and was sufficiently rebutted by other evidence, and (2) that "the evidence tended to show that defendant was reluctant about his responsibility to provide support for [the child]" was sufficient to support the trial court's "conclusion that the defendant retired and voluntarily reduced his income in bad faith and in deliberate disregard for his obligation to provide reasonable support for [his child]". 157 N.C. App. 284, 289, 579 S.E.2d 120, 123 (2003). This Court viewed "all this evidence in the context of defendant's voluntary decision to retire though he was an able-bodied, 52 year old worker with no physical disabilities who was capable of earning sufficient funds to provide for his daughter," and held that the trial court did not abuse its discretion by imputing income to the defendant. *Id.*, at 124.

The trial court properly entered findings of fact that support the conclusions of law, which in turn support the judgment in favor of plaintiff. Accordingly, I would affirm the trial court on the question of imputation of income.