IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-691

No. COA21-158

Filed 21 December 2021

Mecklenburg County, No. 15 CVD 11749

ANGEL MENDEZ, Plaintiff,

v.

LINDA MENDEZ, Defendant.

Appeal by defendant from order entered 2 September 2020 by Judge Christine T. Mann in Mecklenburg County District Court. Heard in the Court of Appeals 17 November 2021.

*The Metz Law Firm, PLLC, by Keith B. Metz, for plaintiff-appellee.*

*Clark-Ford Law PLLC, by Melissa Clark-Ford, for defendant-appellant.*

TYSON, Judge.

¶ 1 Defendant, Linda Mendez ("Defendant"), appeals from order modifying child support entered 2 September 2020. We affirm.

## I. Background

¶ 2 Plaintiff, Angel Mendez ("Plaintiff"), and Defendant were married in December 2007 and divorced in August 2013. The parties are parents of three children and share custody. Plaintiff paid $2,271.00 in child support each month per order filed 29 December 2015. Defendant's Motion to Modify Child Support was filed December

2018.

¶ 3        Defendant is employed full-time with a monthly gross income of $3,964.00 and provides medical insurance for the minor children. Defendant sought to modify the child support order based upon the changing needs of the children and their enrollment in new activities, namely, music lessons, fencing, and acting classes. Defendant asserted Plaintiff had additional sources of income and requested an award of attorney's fees in the amount of $7,300.00.

¶ 4        As part of the initial child support claim, Plaintiff filed an Amended Child Support Financial Affidavit ("Affidavit") on 13 November 2015. He affirmed, his income from Custom Gun Rails ("CGR") was $12,049.00 per month, which included the deposits from the United States Department of Defense ("DoD").

¶ 5        Plaintiff had three sources of income simultaneously: contract work as an instructor through DoD, his private business, CGR, and his VA Disability.

¶ 6        Plaintiff's employment with the DoD required him to wear body armor, stand for 12+ hours a day, perform physical activities, and to use firearms. Plaintiff earned a gross annual income of $189,755.00 in 2016, $181,307.93 in 2017, and $204,512.55 in 2018.

¶ 7        Plaintiff's second source of income was from his business, CGR. CGR fabricated custom engraved gun rails. Plaintiff was the only employee. Plaintiff no longer receives any income through CGR. He had sold the machinery to make the

engraved gun rails in the summer of 2019. Plaintiff testified he had contributed personal funds to cover CGR's operating expenses.

¶ 8    Plaintiff's third source of income derived from is his VA disability. In January 2019, Plaintiff was diagnosed with prostate cancer. Plaintiff's VA disability rating increased from 10 percent to 60 percent, resulting in an increased monthly payment of $1,515.00.

¶ 9    Plaintiff provided medical records to show his cancer treatment, chronic sinus disease, and his bladder deformity. Plaintiff testified he could no longer physically continue to do the work required of him in the contractor position with the DoD without significant pain from his ailments. Plaintiff testified he planned to begin attending classes at Columbia University School of Law full-time in January 2020, with the ultimate goal of becoming an attorney, and would no longer continue to work as a government contractor for the DoD.

¶ 10    Plaintiff applied for admission to Columbia University School of Law and was accepted on 1 October 2018. Plaintiff decided to postpone his pursuit of a degree from Columbia to focus on his cancer treatment and recovery and intended to begin classes thereafter. Plaintiff testified he intended to pay for school by using an extension of his GI Bill and would continue to be eligible for payment of tuition costs and a Basic Housing Allowance.

¶ 11    Plaintiff filed a petition with the United States Bankruptcy Court for the

Northern District of Texas on 4 October 2017. The 2017 Bankruptcy petition reflected gross receipts *before* deductions, as they received in 2017. Plaintiff's Affidavit provides for monthly gross income *after* deductions in 2015.

The trial court concluded Plaintiff's child support payment be reduced to $1,272.00 per month in a modification of child support order signed 2 September 2020. The order required the parties pay equally for the children's uninsured medical expenses. Finally, the court found Defendant had failed to prove Plaintiff was not making adequate payments under the circumstances and denied Defendant's motion for attorney's fees.

## II.    Jurisdiction

This appeal is properly before this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(2) (2019).

## III.    Issues

Defendant raises three issues on appeal, whether the trial court erred in refusing to: (1) impute income to Plaintiff from his DoD position; (2) consider as extraordinary expenses the costs of the children's activities; and, (3) award Defendant attorney's fees.

## IV.    Argument

### A.   Imputing Plaintiff's Income

#### 1.  *Bad Faith*

¶ 15  For modification of child support orders, "our review is limited to a determination [of] whether the trial court abused its discretion." *Johnston Cnty. ex rel. Bugge v. Bugge*, 218 N.C. App. 438, 440, 722 S.E.2d 512, 514 (2012) (citation omitted). "Under this standard of review, the trial court's ruling will be overturned only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Id* (citation omitted).

¶ 16  Defendant argues Plaintiff had hidden income in bad faith. When a party acts in a matter which indicates a disregard to a child support obligation, this disregard to the child support obligation is referred to as bad faith. Whether or not a party is acting in bad faith, "the basic issue to be determined is whether, the husband, by reducing his income, [is] primarily motivated by a desire to avoid his reasonable support obligations[.]" *Wachacha v. Wachacha*, 38 N.C. App. 504, 508, 248 S.E.2d 375, 377-78 (1978) (internal citations and quotation marks omitted).

¶ 17  In *Wachacha*, the father left his job as a director of recreation to return to college to complete his undergraduate degree by using his GI Bill. *Id*. The father failed two classes and withdrew. After withdrawing from school, the father took a position with a construction company, earning less money than as the director of recreation. *Id*. This Court concluded, "[w]e do not think the evidence summarized above is sufficient to support the court's conclusion that the plaintiff-[father's] change of circumstances has voluntarily effected (sic) him in disregard of his marital and

parental support obligations." *Id.* at 508, 248 S.E.2d at 378.

¶ 18 Evidence of a voluntary reduction of income alone is not sufficient to support a finding and conclusion of acting in bad faith. The party who has voluntarily reduced their income must be motivated by the desire to avoid his or her child support obligations. *Pataky v. Pataky*, 160 N.C. App. 289, 308, 585 S.E.2d 404, 416 (2003). "[T]his Court has suggested that where a defendant forgoes all employment [to] become a full-time student there may not be bad faith provided he continues to adequately provide for his children." *Id.* at 307, 585 S.E.2d at 416 (citation and internal quotation marks omitted). Unemployment or under employment does not mean a party is acting in bad faith. *Id.*

¶ 19 Like the facts in *Pataky*, Plaintiff was not unemployed by choice, and he continued to work until the start of Spring 2020. Plaintiff intended to leave his job at the DoD and pursue a legal career. Plaintiff testified his position as an instructor for the DoD required 12-hour and extensive physical strains, which took a toll on Plaintiff's body over the course of time, causing certain physical limitations. Plaintiff testified in addition to his prostate cancer diagnosis, he was also diagnosed with degenerative disc disease along his entire spine, and joint diseases in both feet, both ankles, both knees, both hips, and one rib. He presented evidence of chronic sinus disease.

¶ 20 Plaintiff's testimony concerning his physical impairments was supported by

and further detailed in Plaintiff's medical records, which were admitted at trial. Plaintiff testified, "my entire spine and my, both of my legs there's just constant pain and tingling and more. So jobs that have to do or that negatively impact that, I can't do."

The trial court found, although Plaintiff was receiving a 60% service disability, this fact did not prohibit Plaintiff from working, but he cannot continue to do the kind of work he was doing as a DoD government contractor. The trial court stated:

> can he leap a tall building in a single bound and scale walls and shoot guns and roll out of tanks and all that, probably not . . . He was a combat . . . instructor, top secret in the military, and that is not like being a lawyer or an accountant . . . it makes it different.

Defendant argues that Plaintiff's decision to stop working with the DoD is evidence of bad faith. She claims Plaintiff can continue working in his government contractor position because he was working one month before the start of this trial.

Plaintiff presented evidence tending to show, despite the significant pain he experienced from his disabilities and cancer treatment, he had continued to work until right before the start of his classes at Columbia University and was still willing to provide support for his children. Such actions tend to show Plaintiff's good faith in continuing to provide support. The trial court clearly articulated its findings and conclusions that Plaintiff could not physically continue his DoD employment and was justified in seeking a legal or new career. Defendant's argument that Plaintiff had

assumed a reduced income in bad faith is without merit and is overruled.

## 2. *Shielding Income*

The standard of review on appeal is whether adequate evidence supports the trial court's findings of fact and whether the conclusions of law are supported, given the facts presented. *Juhnn v. Juhnn,* 242 N.C. App. 58, 61-62, 775 S.E.2d 310, 313 (2015). "An abuse of discretion occurs when the trial court's decision is manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *Id.* at 62, 775 S.E.2d at 313 (citation and internal quotation marks omitted).

This case is distinguishable from the facts in *Juhnn,* wherein this Court affirmed the trial court's ruling finding the defendant attempted to hide income by engaging in a pattern of concealing and underreporting income.

Here, Defendant presented various invoices from 2019, which reflected Plaintiff earned a rate of $710.00 per day for his contract work. Plaintiff contested the invoices as misleading and not accurately reflecting Plaintiff's true income. Plaintiff asserts this gross income which includes reimbursements for lodging, transportation, and meals while stationed overseas.

The trial court concluded the income Plaintiff was earning in December 2019 was similar to what Plaintiff had earned since 2015. The trial court considered all three of Plaintiff's jobs and the invoice submitted by Defendant and found:

It's about a 70/30 split . . . his daily rate . . . $710 per day rate in 2019. And he said, 'I work about two weeks per month.' I just did the math on that, which makes it $3,550 per week, comes to 26 weeks $92,300, which is remarkably in line with what he's been making over the last four years, if you do the 70/30 thing. Well, not remarkably in line, but somewhat in line. I think he didn't work as much maybe because he had all of these medical things.

¶ 28      Plaintiff testified that between 2011, when he started his company, CGR through 2015, his work as a contractor for the DoD was paid directly to CGR. This explains the large sums of income moving in and out of the CGR account prior to 2016, which Defendant claims is proof of Plaintiff's bad faith. The remaining monies being moved in the CGR account is explained by Plaintiff as business expenses such as ride sharing costs, medical expenses, or tax expenses to the county.

¶ 29      Defendant argues the bankruptcy documents filed in 2017 by Plaintiff reflect a different income than what was provided on Plaintiff's Affidavit filed in 2015. A copy of the bankruptcy petition was identified as an exhibit but never admitted into evidence during trial.

¶ 30      Plaintiff argues the 2017 bankruptcy petition referred to during his testimony reflected gross receipts *before* deductions, as they were in 2017 and compares it to Plaintiff's Affidavit which provides for monthly gross income *after* deductions in 2015. The trial court also had previously made specific findings of Plaintiff's income in 2015 as part of an initial child support order. The Affidavit did not account for Plaintiff's

entire yearly earnings in 2015, whereas his 2015 tax returns did.

¶ 31       In consideration of all the evidence presented, and Defendant's extensive cross-examination of Plaintiff regarding his finances, the trial court did not find any bad faith by Plaintiff in the reduction of his income, or that he was hiding his income. Defendant's argument is without merit and is overruled.

### B. Children's Activities as Extraordinary Expenses

¶ 32       Defendant argues the North Carolina Child Support Guidelines provide extraordinary expenses may be added to the child support obligation, if the court finds they are reasonable, necessary, and in the child's best interest. "The trial court is vested with discretion to make adjustments to the guideline amounts for extraordinary expenses, and the determination of what constitutes such an expense is likewise within its sound discretion." *Doan v. Doan*, 156 N.C. App. 570, 574, 577 S.E.2d 146, 149 (2003) (citation omitted). "[A]bsent a party's request for deviation, the trial court is not required to set forth findings of fact related to the child's needs and the non-custodial parent's ability to pay extraordinary expenses." *Balawejder v. Balawejder*, 216 N.C. App. 301, 316–17, 721 S.E.2d 679, 688 (2011) (citation omitted).

¶ 33       After briefly hearing some of Defendant's evidence regarding the minor children's extracurricular activities, the court determined the costs for these activities were not extraordinary expenses under the Guidelines and stated it would hear no further evidence regarding the costs of their activities. The trial court

possesses discretion to determine what expense does and does not constitute an extraordinary expense. *Doan*, 156 N.C. App. at 574, 577 S.E.2d at 149.

No evidence presented tended to show any of the children possessed any special needs or significant talent which would require such activities. The trial court chose not to hear evidence of the children's activities, within its discretion.

The determination of the costs of activities was not relevant and did not constitute extraordinary expenses. No abuse its discretion is shown, when the court was under no requirement to consider extraordinary expenses or evidence. Defendant never moved to deviate from the Guidelines. As the reasoning in *Balawejder* points out, the trial court is not required to consider extraordinary expenses, but it can consider in its discretion without such a request. The trial court had no duty to consider the extraordinary expenses. Defendant's argument is overruled.

### C. Attorney's Fees

> [T]he court may in its discretion order payment of reasonable attorney's fees to an interested party acting in good faith who has *insufficient means to defray the expense of the suit*. Before ordering payment of a fee in a support action, the court must find as a fact that the party ordered to furnish support has refused to provide support which is adequate under the circumstances existing at the time of the institution of the action or proceeding.

*Hudson v. Hudson*, 299 N.C. 465, 469, 263 S.E.2d 719, 722 (1980) (citation omitted).

¶ 36          Defendant learned that Plaintiff had been diagnosed with cancer in early 2019. Defendant knew of Plaintiff's application and intent to attend law school. Defendant could reasonably presume any further prosecution of the Motion to Modify by seeking an increase in child support would not be decided in her favor, but it could also result in a reduction of child support. Defendant elected to prosecute the matter instead of dismissing it.

¶ 37          Defendant admitted she had paid her attorney fees in full. Defendant's payments to her attorney for her fees incurred is evidence that she has sufficient funds to defray the expenses. Defendant admits, "After gross, my net is only $2,800 to $2,900, and over half of that has gone to pay my attorney fees." This indicates that Defendant has funds left over after paying her household expenses.

¶ 38          Finally, Defendant's motion to modify was solely for child support. Defendant must also prove that Plaintiff failed to pay support that was adequate under the circumstances. No evidence was presented tending to show Plaintiff had failed to pay the ordered child support, was not currently paying, or did not intend to pay his child support obligation.

¶ 39          The trial court considered Defendant's claims. The trial court made a finding that Plaintiff had been paying his child support obligation, specifically, "the facts are he was 10 percent disabled and didn't have cancer, and was operating and he was doing[,] he was working and paying a nice chunk of child support."

Defendant did not meet her burden in proving she was entitled to an attorney's fee award. Defendant has not shown the refusal to award her attorney's fees was an abuse of discretion. Defendant's argument is overruled.

## V. Conclusion

The trial court did not err in refusing to impute Plaintiff's prior income, find he acted in bad faith, or had hidden income. The trial court's discretionary decision to exclude expenses for the children's activities was proper because Defendant did not move to deviate from the Guidelines.

The trial court properly denied an award of attorney fees to Defendant. Defendant failed to meet the required showing to be awarded attorney fees. The findings and conclusions of the trial court are affirmed. *It is so ordered.*

AFFIRMED.

Judges DIETZ and GRIFFIN concur.