CYNTHIA ANN FREY, Plaintiff v. JOHN P. BEST, JR., Defendant

No. COA07-703

(Filed 15 April 2008)

**1. Divorce— alimony—reduction—findings**

The trial court erred by reducing a husband's alimony obligation to zero without making findings regarding the wife's reasonable needs or the husband's ability to pay. A finding that the wife's income increased is not alone sufficient to warrant modification of an alimony order, and the court may not use the husband's capacity to earn as the basis of its alimony award unless it finds that he deliberately depressed his income or indulged in excessive spending.

**2. Child Support, Custody, and Visitation— child support— reduction—findings**

The trial court's findings were not sufficient to reduce a husband's child support obligation where the husband had remarried and had another child (that alone is not sufficient) and findings about the husband's decreased income were not sufficient to determine whether the modification of support was

based on a substantial change in circumstances supported by competent evidence.

**3. Child Support, Custody, and Visitation— moving out of state—findings conclusive on appeal**

The trial court did not abuse its discretion by denying a wife's request to modify the parenting agreement to allow her to relocate with the children to the State of Washington. The court's findings are conclusive on appeal if there is evidence to support them, even if the evidence might sustain findings to the contrary.

**4. Child Support, Custody, and Visitation— visitation increased—findings**

The trial court erred by increasing a husband's visitation with the minor children without sufficient findings to support its conclusion. The conclusion about the husband's custodial time was not supported by findings of fact indicating that those changes affected the welfare of the parties' minor children.

Appeal by plaintiff from judgment entered 28 September 2006 by Judge Lillian Jordan in Durham County District Court. Heard in the Court of Appeals 4 February 2008.

*Sandlin & Davidian, P.A., by Deborah Sandlin, for plaintiff-appellant.*

*No brief, for defendant-appellee.*

MARTIN, Chief Judge.

Plaintiff Cynthia Ann Frey ("wife") and defendant John P. Best, Jr. ("husband") were married on 4 April 1998 and separated on 13 September 2002. Three children were born to the parties during the course of their marriage; at the time the parties separated, the ages of the children were four years, two years, and six months. On 8 October 2002, the parties executed a Separation, Child Custody, and Family Support Agreement. In May 2003, wife filed a complaint seeking enforcement of the parties' October 2002 Family Support Agreement, as well as sole custody of the minor children, child support, post-separation support, alimony, equitable distribution, issuance of a temporary restraining order to prevent waste of a named marital asset, and attorney's fees. On 20 June 2003, husband filed his Answer, Counterclaim, and Motions seeking joint custody of the minor children and praying for the court to set the amount of child support

according to the North Carolina Child Support Guidelines. Wife filed her Reply to husband's counterclaims on 21 July 2003. The record on appeal referenced more than eighteen motions subsequently filed by both parties; those motions and orders relevant to the issues before this Court are identified below.

On 26 June 2003, the parties agreed in a consent order that husband would pay $1,150.00 per month in child support and $1,150.00 per month in alimony, in addition to other costs including health insurance for wife and the minor children, as well as $5,500.00 in arrearages accrued under the parties' October 2002 Family Support Agreement. On 10 July 2003, the court entered an order incorporating the parties' Parenting Agreement which established that the minor children would reside with wife and would visit with husband on specified days and times.

On 12 March 2004, husband filed a motion to modify alimony and child support based on a substantial change in circumstances. On 14 June 2004, wife filed a motion praying for the court to deviate from the North Carolina Child Support Guidelines in the event that the court determined there had been a substantial change in circumstances when considering husband's 12 March motion. On 10 September 2004, the court entered an Amended Order dismissing wife's motion to deviate from the North Carolina Child Support Guidelines and reducing husband's child support obligation to $964.95 per month. The amount of alimony payable to wife remained $1,150.00 per month based on the court's findings regarding wife's actual monthly needs and its conclusions regarding husband's continued ability to pay. The court also ordered husband to pay arrearages accrued in child support, alimony, and unreimbursed medical expenses for the minor children, as well as wife's attorney's fees. On 4 November 2004 and 28 March 2006, the court ordered husband to be held in Durham County Jail after finding him in contempt for continued nonpayment of child support and alimony.

On 28 June 2006, wife filed a motion to amend the current parenting agreement between the parties to allow her to relocate with the minor children to Olympia, Washington. On 11 July 2006, the court entered a pretrial conference order signed by wife (*pro se*), husband's counsel, and the presiding judge setting the hearing on the issue of child custody for 21-22 September 2006. On 11 August 2006, husband filed and served a motion to modify child custody, child support, and alimony based upon a material and substantial change in circum-

stances. A hearing on wife's motion to permit relocating the children to the State of Washington was held on 14-15 September 2006. At that time, the court indicated its intent to also hear husband's 11 August 2006 motion to "modify the existing custodial, child support and alimony orders, which are in effect." Wife's counsel asked to continue the matters of child support and alimony because she was not aware that those issues were set for court on that day and was "not prepared to go forward." Nevertheless, the court decided to "just hear all issues pending."

On 28 September 2006, the court entered an order denying wife's motion to relocate with the minor children, reducing husband's alimony payments to $0, and reducing husband's child support payments to $720.00 per month. Husband was also ordered to pay a total of $43,412.30 in arrearages arising from amounts due for alimony, child support, medical bills, child care, and attorney's fees. Due to a finding that husband "ha[d real anger] problems that if left unchecked could have an adverse effect on his sons," husband was also ordered to attend an anger management assessment within 90 days from the order entry date, and to complete the treatment recommended, if any. By consent of the parties, all of whom were residents of Wake County at the time of the September 2006 hearing, the case was transferred to Wake County.

---

The record on appeal contains forty-five assignments of error. Those assignments of error for which wife failed to present arguments are not discussed below and are deemed abandoned. N.C.R. App. P. 28(a) (2008) ("Questions raised by assignments of error in appeals from trial tribunals but not then presented and discussed in a party's brief, are deemed abandoned.").

I.

[1] Wife first contends that the trial court erred by reducing husband's alimony obligation to zero dollars ($0.00) without making findings of fact regarding wife's reasonable needs or husband's ability to pay alimony. We agree.

"An order of a court of this State for alimony or postseparation support, whether contested or entered by consent, may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested." N.C. Gen. Stat. § 50-16.9(a) (2007). "This power to modify includes the power to terminate alimony altogether." *Self v. Self*, 93 N.C. App. 323,

325, 377 S.E.2d 800, 801 (1989) (citing *Sayland v. Sayland*, 267 N.C. 378, 148 S.E.2d 218 (1966)).

On 26 June 2003, the parties in this case agreed in a consent order that husband would pay wife $1,150.00 per month in alimony. "[W]hen alimony is part of a private agreement between the parties and is then incorporated into a court order such as a divorce decree[,] . . . the agreement is treated as a court order for purposes of modification." *Cunningham v. Cunningham*, 345 N.C. 430, 434, 480 S.E.2d 403, 405 (1997). Therefore, for the trial court to have the authority to modify the 2003 alimony order in the present case, it must have determined that there was "a showing of changed circumstances." *See* N.C. Gen. Stat. § 50-16.9(a).

" 'As a general rule, the changed circumstances necessary for modification of an alimony order must relate to the financial needs of the dependent spouse or the supporting spouse's ability to pay.' " *Cunningham*, 345 N.C. at 436, 480 S.E.2d at 406 (quoting *Rowe v. Rowe*, 305 N.C. 177, 187, 287 S.E.2d 840, 846 (1982), *disc. review denied*, 314 N.C. 331, 333 S.E.2d 489 (1985)). However, "it [i]s error for a court to modify an alimony award based only on a change in the parties' earnings." *Self*, 93 N.C. App. at 326, 377 S.E.2d at 801. "The significant inquiry is how [a] change in income affects a supporting spouse's ability to pay or a dependent spouse's need for support." *Id.* (internal quotation marks omitted). The trial court is required to "find specific ultimate facts to support [its] judgment [that there has been a material and substantial change in circumstances to support a modification of an alimony order], and the facts found must be sufficient for the appellate court to determine that the judgment is adequately supported by competent evidence." *Montgomery v. Montgomery*, 32 N.C. App. 154, 156-57, 231 S.E.2d 26, 28 (1977).

### A.

When determining a dependent spouse's need for support, "[t]he trial court should . . . consider[] the *ratio* of [the dependent spouse's] earnings to the funds necessary to maintain [his or] her accustomed standard of living . . . ." *Self*, 93 N.C. App. at 326, 377 S.E.2d at 801 (internal quotation marks omitted). This Court has held that "the trial court's failure [to consider or] to make any findings regarding [the dependent spouse's] reasonable current financial needs and expenses and the ratio of those needs and expenses to [his or] her income constitute[s] error." *See id.* at 326-27, 377 S.E.2d at 802.

In the present case, the court concluded there had been "a substantial and material change in circumstances" affecting husband's obligation to pay alimony to wife based on the following findings of fact:

17. When the parties entered into the consent order on June 26, 2003 setting the alimony payments at $1150.00 per month[, wife] was employed part time and had monthly gross earnings of $200.00 and the youngest child was 6 months old. [Husband] has filed a motion to decrease his alimony payments.

18. [Wife] is currently employed as a CPA. She works 35 hours per week and makes $25.00 per hour and has a monthly gross income of $3788.00. This constitutes a substantial and material change in circumstances and the alimony award is reduced to zero. However[, husband] is still responsible for the alimony arrearages [in the amount of] $29,350.12 . . . .

In other words, as the basis for its determination that there was a "substantial and material change in circumstances" sufficient to allow modification of the alimony award, the trial court found only that wife's income had increased since the entry of the original alimony order. However, an "increase in [wife's] income . . . alone is not a sufficient change in circumstances to warrant a modification" of the alimony order. *See Cunningham*, 345 N.C. at 439, 480 S.E.2d at 408. Therefore, "[w]e find error in the trial court's failure to make any findings as to [wife's] current reasonable expenses and her income and earning capacity and the ratio between them." *See Self*, 93 N.C. App. at 327, 377 S.E.2d at 802.

B.

"[T]he ability of the supporting spouse to pay [alimony] is ordinarily determined by his or her income at the time the award is made." *Quick v. Quick*, 305 N.C. 446, 453, 290 S.E.2d 653, 658 (1982). "If the supporting spouse is deliberately depressing income or engaged in excessive spending [because of a disregard of the marital obligation to provide support for the dependent spouse], then capacity to earn, instead of actual income, may be the basis of the award." *Id.* Absent findings of fact to indicate whether the trial court believed that the supporting spouse was "deliberately depressing his or her income or indulging in excessive spending . . . [in] disregard of the marital obligation to provide support for the dependent spouse, the

ability of the supporting spouse to pay alimony is ordinarily determined by his or her income at the time the award is made." *Id.*

Here, the court made the following findings of fact regarding husband's income:

20. At the time of the June 2004 hearing [in which husband's child support obligation was first reduced, the] . . . court found [husband's] monthly gross income to be $5618.00 from his three jobs. He received $1020.00 per month from the City of Durham as a Councilman, $870.00 per month from Bennett Pointe Grill as a bartender, and $3720.00 per month from his business JP Ryan's Party Rentals. [Husband] is no longer a Councilman. He lost the election last fall. He no longer works for Bennett Pointe Grill. It was a mutual decision between the owner and [husband].

21. [Husband] is working only with his business JP Ryan's Party Rentals at this time. He has for years worked second and even third jobs. As with most self employed persons[,] it is difficult to determine exactly what [husband's] income is from his business since there is evidence he pays personal expenses from the business he claims as business expenses and there was evidence that he does not always claim all income[,] especially that paid in cash.

22. The court finds that [husband] is capable of earning at least as much as he was earning in June 2004 minus the amount he earned as a city councilman. The court therefore finds his gross monthly income for the purpose of calculating child support to be $4600.00.

The court found that husband was only working with his business JP Ryan's Party Rentals at the time the court's modified alimony award was made, and found that husband earned $3,720.00 from that business in June 2004. However, the trial court made no findings about his *actual* income from that business at the time of the award. The court also found husband "capable of earning" $4,600.00 *"for the purpose of calculating child support"* based on husband's earnings "in June 2004 minus the amount he earned as a city councilman." (Emphasis added.) Nonetheless, unless the trial court makes findings of fact that husband was "deliberately depressing his . . . income or indulging in excessive spending because of a disregard of [his] marital obligation to provide support for [his] dependent spouse," *see Quick,* 305 N.C. at

**FREY v. BEST**

[189 N.C. App. 622 (2008)]

453, 290 S.E.2d at 658, the court may *not* use husband's "capacity to earn" as the basis for its alimony award.

Additionally, where the alimony order originates from a private agreement between the parties, as it does here, "determining whether there has been a material change in the parties' circumstances sufficient to justify a modification . . . may require the trial court to make findings of fact as to what the original circumstances or factors were *in addition to* what the current circumstances or factors are." *Cunningham*, 345 N.C. at 436, 480 S.E.2d at 406 (emphasis added).

Therefore, "[w]e conclude that the trial court's findings of fact are insufficient for us to determine as a matter of law whether there has been a change of circumstances sufficient to require a modification or termination of the alimony order." *See id.* at 438, 480 S.E.2d at 408. Thus, we vacate the portion of the judgment reducing husband's alimony obligation to zero and remand to the trial court so that it may make further findings and conclusions with respect to this issue, consistent with this opinion.

II.

[2] Wife next contends the trial court erred by reducing husband's child support obligation without making sufficient findings of fact that there had been a substantial change in circumstances affecting the welfare of the minor children. Again, we agree.

"[A]n order of a court of this State for support of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested." N.C. Gen. Stat. § 50-13.7(a) (2007). "The changed circumstances with which the courts are concerned are those which relate to child-oriented expenses." *Gilmore v. Gilmore*, 42 N.C. App. 560, 563, 257 S.E.2d 116, 118 (1979). "The burden is upon the party seeking the modification to establish the requisite change in circumstances." *Id.*

"The modification of the order must be supported by findings of fact, based upon competent evidence, that there has been a substantial change of circumstances affecting the welfare of the child." *Ebron v. Ebron*, 40 N.C. App. 270, 271, 252 S.E.2d 235, 236 (1979). The findings of facts must be "specific enough to indicate to the appellate court that the judge below took due regard of the particular estates, earnings, conditions, [and] accustomed standard of living of both the child and the parents." *Coble v. Coble*, 300 N.C. 708, 712, 268 S.E.2d

185, 189 (1980) (alteration in original) (internal quotation marks omitted). "In the absence of such findings, this Court has no means of determining whether the order is adequately supported by competent evidence." *Id.*

## A.

Wife first argues that it was "improper for the trial court to consider the birth of [husband's] child with his new wife as a change in circumstances" sufficient to permit a modification of his child support obligation to the parties' minor children. "[P]ayment of support for a child of a former marriage may not be avoided merely because the husband has remarried and thereby voluntarily assumed additional obligations." *Shipman v. Shipman*, 25 N.C. App. 213, 215, 212 S.E.2d 415, 417 (1975) (citing *Sayland v. Sayland*, 267 N.C. 378, 148 S.E.2d 218 (1966)). "[I]ncreases in expenses [that] were voluntarily assumed additional obligations[, including entering into another marital and family relationship,] . . . although they may render the child support payments more burdensome, do not justify a reduction in such payments." *Gilmore*, 42 N.C. App. at 564, 257 S.E.2d at 119. Nevertheless, the North Carolina Child Support Guidelines allow the use of a deduction from a parent's gross income for natural or adopted children "(other than children for whom child support is being determined)" when those other children "currently reside with the parent" who is a party to the support action. *See* N.C. Child Support Guidelines, AOC-A-162, at 4 (2002) (amended 1 Oct. 2006). However, the Guidelines do not permit the use of that deduction to "be the sole basis for modifying an existing [child support] order." *Id.*

In the present case, the trial court found that, "[s]ince the parties separated[, husband] remarried and had another son who is two years old and is the half brother of the three sons born of these parties. . . . [Husband] and his second wife are separated and he has this son approximately half the time." While husband might have been eligible to receive a deduction in his monthly gross income for the purpose of calculating child support if it was determined that the minor child from his second marriage was residing with him, this deduction cannot be the "sole basis" for the court's determination that there had been "substantial and material changes in circumstances regarding the amount of child support." However, it is not clear from the court's order whether this finding was the "sole basis" for the court's decision to modify child support.

FREY v. BEST

[189 N.C. App. 622 (2008)]

B.

Wife next argues that the trial court erred by modifying child support without finding that husband voluntarily left employment opportunities in bad faith and in disregard of his financial obligations to support their minor children. "[A parent's] ability to pay child support is normally determined by his actual income at the time the award is made or modified." *Goodhouse v. DeFravio*, 57 N.C. App. 124, 127, 290 S.E.2d 751, 753 (1982). "If, however, there is a finding that the [parent] is deliberately depressing his income or otherwise acting in deliberate disregard of his obligation to provide reasonable support for his child, his *capacity to earn may be made the basis of the award.*" *Id.* (emphasis added). But "[t]he imposition of the earnings capacity rule must be based on evidence that tends to show the husband's actions resulting in reduction of his income were not taken in good faith." *Id.* at 127-28, 290 S.E.2d at 753-54 (internal quotation marks omitted).

In the findings of fact excerpted in Section I above, the trial court found that husband was only working with his business JP Ryan's Party Rentals at the time the 28 September 2006 order was entered. The court also found that husband "no longer work[ed] for Bennett Pointe Grill" as a result of a "mutual decision between the owner and [husband]." So, the trial court found that husband was "capable of earning at least" $4,600.00 "for the purpose of calculating child support" based on his earnings "in June 2004 minus the amount he earned as a city councilman." However, the trial court made no findings about husband's *actual* income at the time of the award, and made no findings that husband left his job at Bennett Pointe Grill in bad faith or otherwise tried to deliberately minimize his child support obligation.

The welfare of the child is "the 'polar star' in the matters of custody and maintenance, yet common sense and common justice dictate that the ultimate object in such matters is to secure support commensurate with the needs of the child and the ability of the [supporting parent] to meet the need." *Crosby v. Crosby*, 272 N.C. 235, 237, 158 S.E.2d 77, 79 (1967). In the absence of findings of fact showing bad faith, child support orders may be modified upon a showing of substantial change in circumstances

[which] may be shown in any of several ways [including]: a substantial increase or decrease in the child's needs; a substantial and involuntary decrease in the income of the non-custodial par-

ent even though the child's needs are unchanged; [or] a voluntary decrease in income of either supporting parent, absent bad faith, upon a showing of changed circumstances relating to child oriented expenses.

*Wiggs v. Wiggs*, 128 N.C. App. 512, 515, 495 S.E.2d 401, 403 (1998) (citations omitted), *disapproved of on other grounds, Pulliam v. Smith*, 348 N.C. 616, 501 S.E.2d 898 (1998). However, without sufficient findings to establish any of these factors or to support the trial court's use of husband's earning capacity to calculate his monthly gross income in lieu of his actual earnings at the time of the award, we cannot determine whether the court's conclusion to modify husband's September 2004 child support obligation was based on a substantial change in circumstances supported by competent evidence. *See Coble*, 300 N.C. at 712, 268 S.E.2d at 189. Accordingly, we must vacate the portion of the September 2006 judgment reducing husband's child support obligation to $720.00 per month and remand so that the trial court may make further findings and conclusions with respect to this issue, consistent with this opinion.

III.

**[3]** Next, wife contends that the trial court erred by denying her request to modify the parties' parenting agreement to allow her to relocate with the children to the State of Washington. After careful consideration of her arguments, we must disagree.

"In granting visitation privileges, as well as in awarding primary custody of minor children, necessarily a wide discretion is vested in the trial judge." *Shamel v. Shamel*, 16 N.C. App. 65, 66, 190 S.E.2d 856, 857 (1972). "It is well established that where matters are left to the discretion of the trial court, appellate review is limited to a determination of whether there was a clear abuse of discretion." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985); *see also In re Custody of Pitts*, 2 N.C. App. 211, 212, 162 S.E.2d 524, 525 (1968) ("[The trial judge] has the opportunity to see the parties in person and to hear the witnesses, and his decision ought not to be upset on appeal absent a clear showing of abuse of discretion."). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." *White*, 312 N.C. at 777, 324 S.E.2d at 833. Thus, absent a clear abuse of discretion, a trial court's "findings of fact are conclusive on appeal if there is [substantial] evidence to support them, even if evidence might sustain findings to the contrary." *Everette v. Collins*, 176 N.C. App. 168, 170, 625

S.E.2d 796, 798 (2006) (citing *Williams v. Pilot Life Ins. Co.*, 288 N.C. 338, 342, 218 S.E.2d 368, 371 (1975)).

"[T]he court may not make any modifications to [a final or permanent child custody or visitation] order without first determining that there has been a 'substantial change in circumstances' " affecting the welfare of the child. *Simmons v. Arriola*, 160 N.C. App. 671, 674, 586 S.E.2d 809, 811 (2003) (citing *LaValley v. LaValley*, 151 N.C. App. 290, 292, 564 S.E.2d 913, 914-15 (2002)). "[I]f the trial court does indeed determine that a substantial change in circumstances affects the welfare of the child, it may only modify the existing custody order if it further concludes that a change in custody is in the child's best interests." *Shipman v. Shipman*, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003).

This Court has stated that, "[i]n evaluating the best interests of a child in a proposed relocation, the trial court may appropriately consider several factors." *Evans v. Evans*, 138 N.C. App. 135, 142, 530 S.E.2d 576, 580 (2000). Those factors include:

> [t]he advantages of the relocation in terms of its capacity to improve the life of the child; the motives of the custodial parent in seeking the move; the likelihood that the custodial parent will comply with visitation orders when he or she is no longer subject to the jurisdiction of the courts of North Carolina; the integrity of the noncustodial parent in resisting the relocation; and the likelihood that a realistic visitation schedule can be arranged which will preserve and foster the parental relationship with the noncustodial parent.

*Id.* (quoting *Ramirez-Barker v. Barker*, 107 N.C. App. 71, 80, 418 S.E.2d 675, 680 (1992), *disapproved of on other grounds, Pulliam v. Smith*, 348 N.C. 616, 501 S.E.2d 898 (1998)). However, although the trial court "may appropriately consider" these factors, " '[t]he court's primary concern is the furtherance of the welfare and best interests of the child and its placement in the home environment that will be most conducive to the full development of its physical, mental and moral faculties.' " *Id.* at 141, 530 S.E.2d at 580 (quoting *Griffith v. Griffith*, 240 N.C. 271, 275, 81 S.E.2d 918, 921 (1954)). " 'All other factors, including visitorial rights of the other applicant, will be deferred or subordinated to these considerations, and *if the child's welfare and best interests will be better promoted by granting permission to remove the child from the State*, the court should not hesitate to do so.' " *Id.* (emphasis added). "Naturally, no hard and fast rule can

be laid down for making this determination, but each case must be determined upon its own peculiar facts and circumstances." *Griffith*, 240 N.C. at 275, 81 S.E.2d at 921.

In the present case, the trial court concluded in its Conclusion of Law 2 that "[wife's] plan to move the three minor sons to . . . Olympia, Washington[,] is a substantial and material change in circumstances regarding the welfare of said sons." Wife did not assign error to this conclusion of law. The North Carolina Rules of Appellate Procedure require that "[t]he appellant must assign error to each conclusion [of law] it believes is not supported by the evidence." *Fran's Pecans, Inc. v. Greene*, 134 N.C. App. 110, 112, 516 S.E.2d 647, 649 (1999) (citing N.C.R. App. P. 10). "Failure to do so constitutes an acceptance of the conclusion and a waiver of the right to challenge said conclusion as unsupported by the facts." *Id.* Thus, wife waived her right to challenge this conclusion of law. Instead, wife contends that the court's findings of fact do not support its Conclusions of Law 3 and 4:

3. This proposed move across the country would have an adverse effect on the sons and is not in the best interest of the parties' three sons who are ages 4, 6, and 8 because the children have a close and loving relationship with their father . . . . They also have close relationships with extended family members of both parties who live in the area.

4. It is not in the best interest of the minor sons to be uprooted from the area where they have spent their entire life and be separated from their father and their extended family members in the area.

In support of these conclusions, the trial court made the following findings of fact:

6. The court finds that [husband] has regularly had his three sons in his care on a consistent and regular basis and that he and his sons have a good, loving and close relationship.

7. The oldest son, JP, for a time was very angry and did not want to be with [husband]. The court finds that this has changed. The aunt of [wife] testified that [husband] picks up and delivers the boys to her home each time he has them and that the boys are glad to see [husband] and are pretty much happy to go with him and the court so finds.

. . . .

9. Since the parties separated[, husband] remarried and had another son who is two years old and is the half brother of the three sons born of these parties. All four of these children have a close relationship. [Husband] and his second wife are separated and he has this son approximately half the time.

10. [Wife] and [husband] have always lived in the Raleigh/Durham area, as have all of their sons. [Wife's] parents previously lived in Raleigh. She has a brother and sister-in-law in this area and an uncle and aunt who live in Raleigh. [Husband's] parents live in the Durham area. The sons have close relationships with all of these extended family members.

11. [Wife's] parents and her other brothers and sisters and their families live in the Olympia, Washington area. [Wife] wants to relocate there and take her three sons with her so she will have the moral support of her family and help with the boys. She owns a townhouse in Raleigh, the two older boys go to school in Raleigh, she works as a CPA, and she has not remarried and does not have a job transfer or a job in Washington. She does have the promise of a job there. As a CPA she can earn the financial support she needs either here or in Washington.

. . . .

13. It is [husband's] increasing anger over the last [1.5] years and his lack of payments that have made [wife's] life increasingly unpleasant and has encouraged her to want to be closer to her parents.

. . . .

15. [Wife] has not taken advantage of the help she could have from [husband's] family. She has rebuffed their offers to see and keep the children by declaring that they can see the children on [husband's] time. Yet she testified that she allows others to care for the children when she needs help and the court so finds.

In *Evans v. Evans*, 138 N.C. App. 135, 530 S.E.2d 576 (2000), when the trial court "found that the proposed relocation would adversely affect the relationship between the father and his child[, but] . . . made no findings of fact indicating the effect of the . . . relocation on the child himself [and did not] . . . discuss the impact of the proposed

move on the child," *id.* at 141, 530 S.E.2d at 579-80, this Court concluded that "the facts found d[id] not support the conclusions that there ha[d] been a substantial change in circumstances and that it [wa]s in the best interest of the child that the custody decree be amended." *Id.* at 142, 530 S.E.2d at 580. However, in this case, the trial court not only made findings regarding the improving relationship between the children and their father, but also regarding the close relationships the children share with their half brother from husband's second marriage, maternal aunt and uncle, maternal great aunt and uncle, and paternal grandparents who all live in the area. Husband testified that his parents and stepparents, as well as numerous cousins, aunts, and uncles, all live in the Raleigh/Durham area, and his children see them "on a regular occasion" like holidays, birthdays, and other special events, "at least once a month, at the minimum" averaged over a year. Wife's best friend further testified that her children and wife's children have grown up together and are best friends and see each other daily.

Both parties presented evidence that the parties' children were actively involved in soccer, swimming, baseball, basketball, and karate, and their oldest son was active in the Cub Scouts. Wife's best friend testified that the oldest son took second place honors in the Cub Scout-sponsored Pinewood Derby with his maternal great uncle, where they built, painted, and raced a car made out of a block of pinewood, and testified that husband was also present at the event, cheering on his son. Husband, who has joint custody of the minor child from his second marriage, testified that the four children all play well together. He also testified that the parties' three children enjoy building forts, playing laser tag, and riding bikes when they are in his care.

In support of her request to move to Washington, wife testified that her personal Internet research indicated that the average SAT scores of the schools in the State of Washington were about fifty points above North Carolina's average scores, and almost forty points above the national SAT average scores. Wife also testified that the same activities in which the children currently participate, including Cub Scouts, karate, and other sports-oriented programs, are offered in the community in which she and the children would live in Olympia, Washington. Wife also argues that "one of the reasons [she] wanted to leave North Carolina was to put some distance between her and [husband] and defray some of the acrimony that existed." The trial court found that wife's motive in seeking to relocate to

Washington was "so she will have the moral support of her family *and help with the boys*." (Emphasis added.) Wife's mother testified about her willingness to assist her daughter with the children, and identified immediate family members near her home in Olympia, Washington, who would also be available to support wife to look after the children. However, wife did not assign error to the court's finding that she "has not taken advantage of the *help she could have* from [husband's] family," (emphasis added), and "rebuffed their offers to see and keep the children by declaring that [husband's family] can see the children on [husband's] time."

Since the trial court's "findings of fact are conclusive on appeal if there is evidence to support them, even if evidence might sustain findings to the contrary," *Everette*, 176 N.C. App. at 170, 625 S.E.2d at 798 (citing *Williams*, 288 N.C. at 342, 218 S.E.2d at 371), we hold that the trial court's denial of wife's motion to relocate with the children was not an abuse of discretion "manifestly unsupported by reason." *See White*, 312 N.C. at 777, 324 S.E.2d at 833.

IV.

[4] Finally, wife contends that the trial court erred by increasing husband's visitation time with the minor children without sufficient findings of fact to support its conclusion. We agree.

"The same standards that apply to changes in custody determinations are also applied to changes in visitation determinations." *Simmons*, 160 N.C. App. at 674, 586 S.E.2d at 811 (citing *Clark v. Clark*, 294 N.C. 554, 575-76, 243 S.E.2d 129, 142 (1978)). "In a custody modification action, . . . the existing child custody order cannot be modified [unless] . . . the party seeking a modification [first shows] that there has been a substantial change in circumstances affecting the welfare of the child . . . ." *Johnson v. Adolf*, 149 N.C. App. 876, 878, 561 S.E.2d 588, 589 (2002). The moving party must prove a "nexus" between the changed circumstances and the welfare of the child in order for the trial court to determine that a child support order may be modified, *see Shipman*, 357 N.C. at 478, 586 S.E.2d at 255-56 (citing 3 Suzanne Reynolds, *Lee's North Carolina Family Law* § 13.103 (5th rev. ed. 2002)), "and flowing from that prerequisite is the requirement that the trial court make findings of fact regarding that connection." *Id.* at 478, 586 S.E.2d at 255.

Here, in support of its conclusion that "[t]here have been substantial and material changes in circumstances regarding [husband's]

custodial time with the minor sons since the entry of the order approving the parenting agreement in this case on July 10, 2003," the trial court made the following findings of fact:

5. The parties hereto entered into a parenting agreement that became an order of the court July 9, 2003. According to the agreement the three sons are to be in [husband's] care for a period of time each weekend and every Tuesday from 3:30 p.m. until 6:00 p.m. Due to [husband's] work schedule at the time the parties agreed in October 2003 to a modification of this schedule eliminating the Friday night every other weekend. In March of 2006 the parties further modified the schedule and [husband] began having his sons in his care every other weekend from Saturday at 9:00 a.m. until late on Sunday afternoon and every Tuesday. In addition there is some holiday time and three weeks in the summer. [Husband] has not exercised all of his three weeks in the summer but he has exercised the other times. This past summer he used two weeks of his time.

. . . .

8. Since the entry of the order approving the Parenting Agreement and the oral agreement modifying it there has been a substantial change in circumstances in that [husband] no longer works on Friday nights and rents a three-bedroom townhouse instead of a one-bedroom apartment. The children are older now as they were only 6 months, 2 years and 4 years when the parties separated.

As a result of these findings, the trial court ordered an increase in husband's visitation with the minor children.

"Effective appellate review of an order entered by a trial court sitting without a jury is largely dependent upon the specificity by which the order's rationale is articulated." *Coble*, 300 N.C. at 714, 268 S.E.2d at 190. The "link in the chain of reasoning [between findings of fact and conclusions of law] must appear in the order itself. Where there is a gap, it cannot be determined on appeal whether the trial court correctly exercised its function to find the facts and apply the law thereto." *Id.* Here, the court's conclusion that there had been a substantial change in circumstances regarding husband's "custodial time" is not supported by findings of fact which indicate that those changes affected the welfare of the parties' minor children. Accordingly, we must vacate the portion of the judgment increasing hus-

**FREY v. BEST**

[189 N.C. App. 622 (2008)]

band's visitation with the parties' minor children and remand to the trial court so that it may make further findings and conclusions consistent with this opinion.

Our decision to remand this matter for additional proceedings with respect to the issues of alimony and child support render it unnecessary to address wife's contention that she did not receive proper notice from the court that the issues of child support and alimony raised in husband's 11 August motion would be heard at the 14-15 September 2006 hearing.

In closing, we are constrained to remind counsel that "[t]he Rules of Appellate Procedure are mandatory; an appellant's failure to observe the rules frustrates the process of appellate review and subjects the appeal to dismissal." *May v. City of Durham*, 136 N.C. App. 578, 581, 525 S.E.2d 223, 227 (2000) (citing *Steingress v. Steingress*, 350 N.C. 64, 511 S.E.2d 298 (1999)); *see also Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co., Inc.*, No. 303A07 (N.C. Mar. 7, 2008) ("[R]ules of procedure are necessary . . . in order to enable the courts properly to discharge their dut[y] of resolving disputes. It necessarily follows that failure of the parties to comply with the rules, and failure of the appellate courts to demand compliance therewith, may impede the administration of justice.") (second alteration in original) (citation omitted) (internal quotation marks omitted). Here, our review of the issues raised by this appeal has been impeded and prolonged by a multitude of appellate rules violations, both in the record and in the appellant's brief. While, in this case, "we elect[ed] to exercise the discretion accorded us by N.C.R. App. P. 2 to consider this appeal on its merits despite appellant's violations of the Appellate Rules," *see May*, 136 N.C. App. at 581, 525 S.E.2d at 227, counsel is admonished to observe the rules in the future.

Affirmed in part, vacated in part, and remanded.

Judges STEELMAN and STEPHENS concur.