IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1045

Filed 17 December 2025

Mecklenburg County, No. 22CVD005504-590

TRACY BROWN, Plaintiff-Mother,

v.

DAVID D. MILLER, Defendant-Father.

Appeal by defendant from order entered 29 June 2024 by Judge J. Rex Marvel in Mecklenburg County District Court. Heard in the Court of Appeals 27 August 2025.

*Modern Legal, by Theresa E. Viera, for plaintiff-appellee.*

*Sodoma Law, by Rebecca K. Watts, for defendant-appellant.*

ZACHARY, Judge.

Defendant David D. Miller ("Father") appeals from the trial court's order awarding permanent child support, permanent child custody, and attorney's fees to Plaintiff Tracy Brown ("Mother").[1] After careful review, we affirm in part, reverse in part and remand.

## I.   Background

---

[1] On appeal, Father does not challenge the trial court's child custody award. Accordingly, that portion of the court's order remains undisturbed. *See* N.C.R. App. P. 28(a) ("Issues not presented and discussed in a party's brief are deemed abandoned.").

Mother and Father were married in 2005 and divorced in 2013. They have one minor child. On 14 September 2011, the parties executed a "Contract of Separation, Property Settlement, Alimony, Child Custody and Support Agreement" ("the Separation Agreement"). The Separation Agreement was never formalized as a court order.

The Separation Agreement included, inter alia, the following provisions pertinent to child support:

> [Father] shall pay to [Mother] as child support the sum of $219.00 per month, payable on the first day of the month following the separation of the parties and payable thereafter on the first day of each month subject to the modifying or terminating events set forth hereafter.

> Child support is based upon the following factors: [Mother]'s gross monthly income of $5292 (a 37.47% share of income), [Father]'s gross monthly income of $8833 (a 62.53% share of income), and a 50/50 timeshare. The parties agree to re-calculate the child support amount annually or as salaries are adjusted.

The Separation Agreement also provided for an annual renegotiation of the child support obligation or, at the option of either party, a judicial determination of the child support obligation:

> On or before April 15 of each year, the parties will exchange their tax returns, W-2 forms and 1099 forms to determine if either party has a change in income such that an adjustment in child support may be appropriate.

> During any such renegotiation of child support, the parties shall provide each other full documentation of all income and shall recalculate child support according to the

Child Support Guidelines to ensure they are making fully informed decisions regarding support for the child. This computation shall not automatically obligate either parent to such child support figure. *However, each party understands that in the event of a substantial change in circumstances, child support shall be subject to modification by a court of competent jurisdiction.* The annual exchange of documentation shall be the basis for determining for the succeeding 12 months the ratio of the parties' gross incomes to each other for the purpose of determining each parties' share of the expenses set forth in subparagraphs (a) through (h).

(Emphasis added).

On 1 April 2022, Mother filed a complaint for child custody and motion for attorney's fees. On 23 May 2022, Father filed his answer and counterclaim for child custody. On 24 June 2022, the trial court entered a temporary custody order ("the Temporary Custody Order") awarding Mother sole legal and physical custody of the parties' child and Father scheduled visitation. Under the terms of the Temporary Custody Order, Mother and Father were required to equally share the costs of their child's therapy.

Father did not pay any child support to Mother during the month following the entry of the Temporary Custody Order. On 25 July 2022, Mother filed a motion in the cause raising claims for breach of contract and specific performance related to Father's alleged violations of certain child support provisions of the Separation Agreement, as well as advancing claims for judicially determined child support and attorney's fees. On 16 March 2023, Mother voluntarily dismissed her claims for

breach of contract and specific performance.

The parties reached an agreement concerning temporary child support pending a hearing on permanent child support, and the trial court entered a memorandum of judgment/order recording the terms of the parties' agreement on 14 August 2023. The parties agreed, *inter alia*, that Father would pay Mother temporary child support in the amount of $1,346.00 per month, together with "$700 per month towards any potential arrearage that may, or may not, be determined at a future hearing." They also agreed to "equally divide the child's uninsured medical, health, and therapy expenses" beginning on 1 September 2023.

On 6 March 2024, Mother filed a motion for civil contempt and attorney's fees, alleging Father's "explicit refusal to comply with" the terms of the memorandum of judgment/order. The civil contempt matter came on for hearing on 23 April 2024. By order entered on 13 May 2024, the trial court held Father in civil contempt for willful violations of the terms of the memorandum of judgment/order and directed him to pay Mother $5,420.25 for her attorney's fees in monthly increments of $200.00 beginning on 1 May 2024. The court found, *inter alia*, that Father had failed to pay: (1) $4,038.00 in ongoing temporary child support for the months of February to April 2024; (2) $2,100.00 in child support arrears for the months of February to April 2024; and (3) $5,918.57 for his share of the child's unreimbursed medical, health, and therapy expenses through 22 January 2024. The court ordered that Father be held in the custody of the Mecklenburg County Sheriff but stayed execution of this decree

and allowed Father until 9:00 a.m. on 30 April 2024 to purge himself of his contempt of court by paying Mother $12,056.57. However, Father had not satisfied the purge condition as of the second contempt hearing on 30 April, which he failed to attend.

On 31 May 2024, the parties' child custody, child support, and attorney's fees claims came on for trial. On 29 June 2024, the trial court entered an order that included the following findings of fact regarding its calculation of child support:

> 47. As of the date of trial on May 31st, Mother had received only $10,000.00 of the amount owed under the Civil Contempt Order and [memorandum of judgment/order].
>
> 48. From January 23, 2024, through the date of trial, Father has failed to pay his 50% portion of unreimbursed medical, health, and therapy expenses as required by the [memorandum of judgment/order] in the total amount of $1,525.00.
>
> 49. Pursuant to the Child Custody arrangement defined in the decretal portion of this Order, the [c]ourt applies North Carolina Guidelines Worksheet A finding the following based on the evidence and exhibits presented:
>
> > a. Mother's income is $4,880.22/month.
> > b. Father's income is $14,517.00/month.
> > c. Mother pays $84.32 for the child's portion of health insurance premium costs.
> > d. Mother pays $974.25/month for the child's extraordinary expenses.
>
> 50. Beginning August 1, 2022, (the 1st of the month following Mother's claim for Child Support), Father owes a child [support] obligation to Mother in the amount of $2,294.00 per month. . . .
>
> 51. From August 2022 through June 2024, Father owes a total ongoing child support obligation of $52,762.00.

52. From August 2022 through June 2024, Father owes a total of $7,443.57 for his 50% portion of unreimbursed health expenses. This is from $5,918.57 (to account for Father's 50% portion of unreimbursed medical, health, and therapy expenses through January 22, 2024 as found by the [c]ourt in the Civil Contempt Order) plus $1,525.00 (to account for his 50% portion of unreimbursed medical, health, and therapy expenses from January 23, 2024, through the date of trial).

53. As of June 30, 2024, Father's total child support arrears = $60,205.57.

54. Under the [memorandum of judgment/order] and in response to the Civil Contempt Order, Father has made payments toward his child support obligation as of the date of trial in a total amount of $22,276.00. . . .

55. After credit, Father's remaining child support arrears owed as of June 30, 2024 = $37,929.57.

Based on these findings, the trial court ordered the following with regard to

child support:

2. <u>Child Support</u>. Beginning July 1, 2024, and continuing on the 1st of each month thereafter, Father shall pay ongoing child support to Mother in the amount of $2,294.00 per month until the minor child graduates from high school or turn[s] eighteen, whichever occurs later.

3. <u>Child Support Arrears</u>. Father's child support arrears are $37,929.57 as of June 30, 2024. Beginning July 1, 2024, and continuing on the 1st of each month thereafter, Father shall pay $706.00 per month toward this child support arrears until paid in full.

4. <u>Health Insurance</u>. Mother shall continue to maintain health insurance for the minor child for so long as she is under an obligation to provide child

support toward the minor child pursuant to [N.C. Gen. Stat. § 50-13.4].

5. <u>Uninsured Medical, Health, and Therapy Expenses</u>. Beginning June 2024, Mother shall pay 100% of the child's unreimbursed medical, health, and therapy expenses.

The court also made a series of findings of fact specifically related to its award of attorney's fees:

57. Per the Civil Contempt Order, Father was also ordered to pay $5,420.25 in attorney's fees, to be paid in increments of $200.00/month starting May 1, 2024. Mother has not received any payments toward said attorney's fees as of the date of trial.

58. The [c]ourt received into evidence the Affidavit of Attorney's Fees, submitted by [Mother's counsel], which detailed time expended and fees incurred related to Mother's claims for Child Custody and Child Support through May 30, 2024 (including estimated fees related to trial on May 31, 2024).

59. Mother entered into an agreement with [her counsel], under the terms of which she agreed to pay [her counsel] at the regular hourly rate billed for her time by her firm, . . . as well as to pay other attorneys and legal assistants working on her case at their regular hourly rates.

60. [Mother's counsel] and her colleagues at [her firm] have rendered valuable legal services to Mother in connection with her claims for Child Custody and Child Support. The fees incurred by Mother in connection with said claims are reasonable in nature, scope, skill, time and rate.

61. Considering the applicable hourly rates and the time involved as set forth on the Affidavit of Attorney's Fees, the nature and value of the services rendered, and the skill and ability called for, the [c]ourt finds that the reasonable value of the services rendered by [Mother's counsel] and her firm

to Mother in connection with her claims for Child Custody and Child Support (separate from the Civil Contempt matter) is at least $75,615.75. Such value is customary for like work performed by legal counsel of similar qualifications and experience in Mecklenburg County, North Carolina.

62. Mother has sufficient means to defray a portion, but not all, of the attorney's fees and costs related to her claims for Child Custody and Child Support. Mother has insufficient means to defray the entire cost of the litigation in relation to her claims and she is entitled to an award of attorney's fees pursuant to [N.C. Gen. Stat. § 50-16.4].

63. It is reasonable and appropriate that Father pay the sum of $30,000.00 to Mother to reimburse Mother for the efforts on her behalf by [her counsel] and her firm. Considering Father's liquid assets, income, and earning potential, Father can afford to pay $30,000.00 in attorney's fees at a rate of $1,250.00 per month (to be paid in full by June 2026). Said amount is in addition to the attorney's fees ordered in the Civil Contempt Order of $5,420.25 payable in increments of $200.00 per month, until said amount is paid in full.

Based on these findings, the court concluded that "Mother has insufficient means to defray a portion of the attorney's fees, costs and litigation expenses of this action, and Mother is entitled to an award of attorney's fees in the Child Custody and Child Support action pursuant to" N.C. Gen. Stat. § 50-13.6. The court further concluded that "[t]he award of attorney's fees set forth herein is reasonable, customary, and appropriate." The court ordered that Father "pay to Mother the sum of $30,000.00 to reimburse her attorney's fees and costs at a rate of $1,250.00 per month" beginning on 1 July 2024, in addition to the attorney's fees awarded in the

Civil Contempt Order.[2]

Father timely filed notice of appeal.

## II. Discussion

On appeal, Father raises several arguments regarding the trial court's child support and attorney's fees awards. First, Father asserts that the court erred by failing "to give proper consideration to the parties' unincorporated separation agreement" in determining his child support obligation. He next contends that the court "erred in its . . . past prospective (arrears) calculation and prospective calculation" because it included in both calculations "uninsured medical expenses that were also addressed and ordered to be paid outside of the [G]uideline calculation." Lastly, Father challenges the sufficiency of the findings of fact supporting the court's award of attorney's fees to Mother.

### A. Child Support

#### 1. Standard of Review

"Our review of a child support order is limited to determining whether the trial court abused its discretion." *Jackson v. Jackson*, 280 N.C. App. 325, 328, 868 S.E.2d 104, 108 (2021) (citation omitted). "Under this standard of review, the trial court's ruling will be overturned only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Id.* (citation omitted). "The trial court

---

[2] At the conclusion of the 31 May 2024 trial, the court executed an order for Father's arrest.

must, however, make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law." *Id.* (citation omitted).

### 2. *Unincorporated Separation Agreement*

Father first asserts that "the trial court's order making an initial child support determination that differs from the parties' contracted[-]for child support obligation [wa]s in error" because the court did not "give proper consideration to the parties' unincorporated separation agreement." We disagree.

Our Supreme Court has long affirmed that "[f]reedom of contract is a fundamental basic right." *Gibbs v. Carolina Power & Light Co.*, 265 N.C. 459, 467, 144 S.E.2d 393, 400 (1965). Where a separation agreement has not been incorporated into a court order, it remains "a contract between the parties and the court is without power to modify it except (1) to provide for adequate support for minor children, and (2) with the mutual consent of the parties thereto where rights of third parties have not intervened." *Jackson*, 280 N.C. App. at 328, 868 S.E.2d at 108 (citation omitted). Our appellate courts have long recognized that "where parties to a separation agreement agree upon the amount for the support and maintenance of their minor children, there is a presumption in the absence of evidence to the contrary, that the amount mutually agreed upon is just and reasonable." *Fuchs v. Fuchs*, 260 N.C. 635, 639, 133 S.E.2d 487, 491 (1963).

This Court has established a detailed analytic framework to guide the trial

court's child support determinations in cases involving unincorporated separation agreements. In *Pataky v. Pataky*, we explained:

> [I]n an initial determination of child support where the parties have executed an unincorporated separation agreement that includes provision for child support, the court should *first apply a rebuttable presumption that the amount in the agreement is reasonable and, therefore, that application of the [G]uidelines would be inappropriate. The court should determine the actual needs of the child at the time of the hearing, as compared to the provisions of the separation agreement.* If the presumption of reasonableness is not rebutted, the court should enter an order in the separation agreement amount and make a finding that application of the [G]uidelines would be inappropriate. If, however, the court determines by the greater weight of the evidence that the presumption of reasonableness afforded the separation agreement allowance has been rebutted, taking into account the needs of the children existing at the time of the hearing and considering the factors enumerated in the first sentence of [N.C. Gen. Stat.] § 50-13.4(c), the court then looks to the presumptive [G]uidelines established through operation of [N.C. Gen. Stat.] § 50-13.4(c1) and the court may nonetheless deviate if, upon motion of either party or by the court *sua sponte*, it determines application of the [G]uidelines would not meet or would exceed the needs of the child or would be otherwise unjust or inappropriate.

*Pataky v. Pataky,* 160 N.C. App. 289, 305, 585 S.E.2d 404, 414–15 (2003) (cleaned up) (emphasis added), *aff'd in part, disc. review improvidently allowed in part,* 359 N.C. 65, 602 S.E.2d 360 (2004) (per curiam). The substance of this analysis—now familiarly referred to as the "*Pataky* presumption"—has been incorporated into the Child Support Guidelines. *See* N.C. Child Support Guidelines, at 1 (2023).

Father argues on appeal that the trial court erred by ordering a child support

obligation in accordance with the Child Support Guidelines that differs from the amount of child support provided in the Separation Agreement without first undertaking the *Pataky* analysis. Although the court referred to the Separation Agreement in its findings of fact, it neither presumed that the amount of child support established in the Separation Agreement was reasonable nor determined that any such presumption was rebuttable.

It is undoubtedly true that, as Father explains, "the trial court must afford sufficient weight to the parties' agreement" when determining child support in the face of the parties' child support provision in an unincorporated separation agreement. Indeed, the intricate process prescribed in *Pataky* is properly grounded in respect for the parties' fundamental right to contract. Here, however, there is a fatal flaw in Father's logic. The Separation Agreement in this case provides that "each party understands that in the event of a substantial change in circumstances, child support shall be subject to modification by a court of competent jurisdiction."[3] This provision plainly evinces the parties' intent that they would both have the option to unilaterally solicit a judicial determination of child support. Consequently, giving "proper consideration" to the Separation Agreement, as Father requests, the application of the rebuttable presumption of reasonableness is simply not necessary to protect the bargained-for benefits of the parties' contract.

---

[3] Neither party disputes that a substantial change of circumstances has arisen in the 11 years since the parties executed the Separation Agreement.

Therefore, we conclude that the *Pataky* presumption of reasonableness is inapplicable to the case at bar, in which the parties have executed an unincorporated separation agreement that explicitly provides that either party may seek a judicial determination of child support. Defendant's argument is overruled.

## B. Uninsured Medical Expenses

Father next argues that "[t]he trial court erred in its child support calculations, both for past prospective (arrears) calculation and prospective calculation when it included in the calculation uninsured medical expenses that were also addressed and ordered to be paid outside of the [G]uideline calculation." We agree.

In *Lawrence v. Tise*, we acknowledged that uninsured medical and dental expenses are "extraordinary expenses" under the Child Support Guidelines, which the trial court may apportion at its discretion. 107 N.C. App. 140, 150, 419 S.E.2d 176, 183 (1992). There are two methods by which a trial court may apportion uninsured medical and dental expenses: 1) by including the expense as an extraordinary expense in the child support calculation, which results in a pro rata division of the expense between the parties, or 2) by ordering each party to pay a set percentage of the expense in addition to the ordered child support payment. The determination of which method to employ is in the discretion of the court.

In the instant case, the child has a regularly recurring therapy expense of $974.25 per month. On 29 June 2024, the court entered an order obligating Father to contribute $2,294.00 toward the support of the parties' child. This sum is payable to

Mother and includes Father's pro rata share of the child's therapy expense as an extraordinary expense. The court ordered that Father's past prospective child support obligation was to be assessed as beginning on 1 August 2022, the month following the filing of Mother's claim for child support. Additionally, the court found that Father was in arrears for his unpaid portion of the therapy expense for the period from August 2022 to June 2024, for which he was obligated under the Temporary Custody Order.

The court ordered that Father's monthly prospective child support payments begin on 1 July 2024, together with a monthly payment toward his arrears. These arrears arose from two time periods: (1) the past prospective arrears that accumulated from August 2022 to June 2024; and (2) the arrears for Father's unpaid share of the child's uninsured medical, health, and therapy expenses that accumulated from August 2022 to June 2024 under the Temporary Custody Order.

In the 29 June 2024 order, the trial court twice assessed Father with payment of a portion of the therapy expense: as an extraordinary expense in the past prospective child support calculation *and* as an obligation under the Temporary Custody Order. This double-counting is in error and "could not have been the result of a reasoned decision." *Jackson*, 280 N.C. App. at 328, 868 S.E.2d at 108 (citation omitted). Thus, the court abused its discretion, and the order must be reversed and remanded for recalculation of Father's arrears obligation. Upon remand, "the trial court shall rely upon the existing record, but may in its sole discretion receive such

further evidence and further argument from the parties as it deems necessary and appropriate to comply with the instant opinion." *Heath v. Heath*, 132 N.C. App. 36, 38, 509 S.E.2d 804, 805 (1999).

Father additionally notes confusion with the court's order that Mother "pay 100% of the child's unreimbursed medical, health, and therapy expenses" beginning with the month of June, 2024, while the court also orders that Father pay his child support obligation of $2,294.00, which includes his pro rata share of the therapy expense as an extraordinary expense. This provision raises some ambiguity as to whether the court intended for Mother to shoulder the full cost of the child's therapy (in which case the expense should not be included in Father's child support obligation), or whether the court intended for Mother to pay the full cost of therapy at the point of service and then have Father reimburse her for his pro rata share through payment of his child support obligation. On remand, the trial court shall clarify its intent with respect to this issue.

## C. Attorney's Fees

Finally, Father argues that the trial court erred by awarding attorney's fees to Mother "when no evidence was presented, and no findings made that [Mother] had insufficient means to defray the costs of the action." We disagree.

### 1. Standard of Review

Our General Statutes provide that "[i]n an action or proceeding for the custody or support, or both, of a minor child, . . . the court may in its discretion order payment

of reasonable attorney's fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit." N.C. Gen. Stat. § 50-13.6. "Whether these statutory requirements have been met is a question of law, reviewable on appeal." *Conklin v. Conklin*, 264 N.C. App. 142, 144, 825 S.E.2d 678, 680 (2019) (citation omitted).

"[W]hen these requirements have been met . . . the standard of review change[s] to abuse of discretion for an examination of the amount of attorney's fees awarded." *Id.* (citation omitted). "Only a finding that the judgment was unsupported by reason and could not have been a result of competent inquiry, or a finding that the trial judge failed to comply with the statute will establish an abuse of discretion." *Sarno v. Sarno*, 255 N.C. App. 543, 548, 804 S.E.2d 819, 824 (2017) (cleaned up). "In addition, the trial court's findings of fact must be supported by competent evidence." *Conklin*, 264 N.C. App. at 144, 825 S.E.2d at 680.

### 2. Analysis

Father does not contest Mother's satisfaction of the first statutory requirement—that Mother is "an interested party acting in good faith," N.C. Gen. Stat. § 50-13.6. Instead, he limits his challenge to a contention that "no evidence was presented, and no findings made that [Mother] had insufficient means to defray the costs of the action."

"A party has insufficient means to defray the expense of the suit when he or she is unable to employ adequate counsel in order to proceed as litigant to meet the

other spouse as litigant in the suit." *Taylor v. Taylor*, 343 N.C. 50, 54, 468 S.E.2d 33, 35 (cleaned up), *reh'g denied*, 343 N.C. 517, 472 S.E.2d 25 (1996).

Father alleges that "[t]he only evidence presented by [Mother] in support of her attorney's fees claim w[as] (1) her attorney's affidavit and (2) her testimony." Of these, Father candidly admits that he takes "no issue with the attorney's affidavit in that it listed the time expended on the case and the amounts charged"; rather, he challenges the evidence that Mother "had insufficient means to defray the costs of the action."

Because N.C. Gen. Stat. § 50-13.6 "does not require the parties to allege or prove that one spouse is a dependent spouse and the other a supporting spouse, there is no need to compare the parties' relative estates when considering whether to award attorney's fees in child custody and support actions." *Id.* at 57, 468 S.E.2d at 37. Of course, "while the trial court should focus on the disposable income and estate of" the parent ordered to pay attorney's fees, the court is not prohibited from making "any comparison with [the other parent]'s estate, for example, in determining whether any necessary depletion of [the other parent]'s estate by paying [his or] her own expenses would be reasonable or unreasonable." *Van Every v. McGuire*, 348 N.C. 58, 62, 497 S.E.2d 689, 691 (1998). These precedents thus place the decision of whether to compare the parties' relative estates in the discretion of the trial court, and such decision will only be reversed upon "a finding that the judgment was unsupported by reason and could not have been a result of competent inquiry, or a finding that the

trial judge failed to comply with the statute." *Sarno*, 255 N.C. App. at 548, 804 S.E.2d at 824 (citation omitted).

Here, the trial court made the findings required by N.C. Gen. Stat. § 50-13.6; Father merely challenges the evidentiary support for the court's finding that "Mother has insufficient means to defray the entire cost of the litigation in relation to her claims." The court found that Mother's monthly income was $4,880.22 and that the reasonable value of her attorney's service to her was at least $75,615.75 (not including the $5,420.25 in attorney's fees that Father already owed to Mother pursuant to terms of the Civil Contempt Order). Father "does not appeal these findings and they are binding on appeal." *Kuttner v. Kuttner*, 193 N.C. App. 158, 160, 666 S.E.2d 883, 885 (2008).

Moreover, these findings—as well as those detailing Father's previous noncompliance with court orders in this matter—support the trial court's determination that "Mother has insufficient means to defray the entire cost of the litigation in relation to her claims." Father is unable to show that the award of attorney's fees "was unsupported by reason and could not have been a result of competent inquiry." *Sarno*, 255 N.C. App. at 548, 804 S.E.2d at 824 (citation omitted). This is especially true in light of the trial court's finding that "Mother has sufficient means to defray *a portion, but not all*, of the attorney's fees and costs related to her claims" (emphasis added), and ordered Father to pay less than half of the total amount that Mother had incurred to date.

Father has not demonstrated that the trial court abused its discretion. Accordingly, we will not disturb the court's award of attorney's fees.

### III.    Conclusion

For the foregoing reasons, the trial court's order is affirmed as to the award of attorney's fees, reversed as to the calculation of Father's child support obligation and arrears, and remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

Judges WOOD and STADING concur.